589 A.2d 485

**U.S. HEALTH, INC., et al.**

**v.**

**STATE of Maryland, et al.**

**Nos. 753, 754, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 3, 1991.

David E. Manoogian (Frank, Bernstein, Conaway & Goldman, on the brief), Bethesda, for appellants.

Lee D. Hoshall, Asst. Gen. Counsel (Michael L. Foreman, Gen. Counsel, on the brief), Baltimore, for appellees.

Argued before BLOOM, ROSALYN B. BELL and DAVIS, JJ.

BLOOM, Judge.

These consolidated appeals by U.S. Health, Inc., are from an order of the Circuit Court for Baltimore City (Ross, J.) summarily dismissing, without argument, an administrative appeal from a ruling made by the appeal board of appellee, Maryland Commission on Human Relations. We shall affirm the judgment of the circuit court, since Judge Ross was absolutely correct in holding that there was no right of appeal to the court from the ruling in question and that the propriety of the ruling could be challenged on appeal from the agency's final order. We shall also grant appellee's motion for sanctions under Md.Rule 1–341, having concluded that there was no justification for bringing this appeal.

## *Background*

The statute that created and defined the duties and powers of the Maryland Commission on Human Relations was first enacted as Chapter 548 of the Laws of 1951 and has been amended several times since. It is now codified as Article 49B of the Annotated Code of Maryland (1957, 1986 Repl.Vol., 1990 Cum.Supp.).

On 17 September 1984, Richard P. Arnold filed a complaint with the Commission alleging sexual discrimination based upon the fact that, although he is a member of appellant's Holiday Spa in Greenbelt, Maryland, he was excluded from the women's aerobics classes at that facility. On 27 November 1985, Bruce Gabler filed a similar complaint based upon his exclusion from the women's aerobics class at appellant's Bethesda facility.

After a protracted delay, the Commission eventually found probable cause to believe that appellant discriminated against complainants Arnold and Gabler, respectively, in violation of Article 49B of the Annotated Code of Maryland. On 1 July 1987, and 29 March 1988, the Commission notified appellant that, as a result of the parties' failure to conciliate, a public hearing would be scheduled. On 10 April 1989, the Hearing Examiner granted appellee's Motion to Consol-

idate the cases for hearing before the agency, which was scheduled for 22–25 May 1989.

Prior to that scheduled hearing, appellant filed with the designated hearing officer a profusion of motions in each case, including motions to compel depositions of the complainants and the Commission's investigator and motions to enforce discovery. The Commission opposed all the motions; with respect to depositions and discovery, it asserted that there was no statutory authority for the relief sought by appellant.

By order dated 26 September 1989, the hearing examiner denied appellant's depositions and discovery motions on the grounds that, pursuant to COMAR 14.03.01.07J, the discovery available to any party prior to a hearing before an agency is limited to production of documents and things. With respect to appellant's argument that the Commission obtained discovery during its investigative process, the hearing examiner concluded that the fact-finding conference and interrogatories were investigative tools used by the Commission to determine whether probable cause exists to believe a discriminatory act has occurred, and are not part of the hearing process.

Appellant filed a Notice of Appeal, requesting review by the Commission's appeal board of the hearing examiner's decision denying appellant's motions. The appeals board granted appellee's Motion to Strike the Notice of Appeal, holding that "there is no provision in Article 49B or the Commission's regulations for an appeal to the Commissioners from a Hearing Examiner's order governing pre-hearing discovery matters such as whether the taking of depositions would be permitted."

Appellant next appealed to the Circuit Court for Baltimore City from the ruling of the appeals board. The court granted appellee's Motion to Dismiss, holding that "no appeal lies from discovery orders of the nature entered by the hearing examiner in this case." The court further indicated that "all issues raised including constitutional

issues can be resolved on appeal from the agency's final order."

Appellant then brought these appeals, which we consolidated for purposes of briefing and oral argument.

## I

Pellucidly, the appeal board's ruling on appellant's request for discovery was not a final order that could be appealed to the circuit court. It is equally transpicuous that denying appellant immediate appeal did not violate its due process rights.

## A.

■ It is the general rule that "an action for judicial review of an administrative order will lie only if the administrative order is final." *Mission Helpers v. Beasley*, 82 Md.App. 155, 161, 570 A.2d 382 (1990) (quoting *Holiday Spas v. Montgomery County*, 315 Md. 390, 395, 554 A.2d 1197 (1989)). "To be 'final' for purposes of judicial review, the order must 'leave nothing further for the agency to do.'" *Id.* (quoting *Md. Comm'n on Human Rel. v. B.G. & E. Co.*, 296 Md. 46, 56, 459 A.2d 205 (1983)).

The appeal board's order simply denied appellant's request to depose certain individuals and its request for production of certain documents. Obviously, the denial of appellant's request for pre-hearing discovery in no way terminated the proceedings "[leaving] nothing further for the agency to do." A hearing on the merits was to follow. Appellant contends that the denial of its request for pre-hearing discovery is analogous to an interlocutory order entered by a circuit court granting an injunction and, should, therefore, although nonfinal, be treated as an exception to the general rule.

In *Holiday Spas v. Montgomery County*, 315 Md. 390, 554 A.2d 1197 (1989), the Court of Appeals addressed a situation in which an administrative order, after determining liability, required Holiday Spas, *inter alia*, to alter its

practices almost at once, but did not resolve the issue of damages. According to the Commission, a panel hearing would be conducted on that issue in the near future. The Court held that

> not every administrative order which determines rights and liabilities, or from which legal consequences flow, is final and thus subject to judicial review. Generally, to be final, an administrative order must also "leave nothing further for the agency to do." (Citations omitted.) That requirement was clearly not met here.

*Id.* at 396, 554 A.2d 1197. According to the Court,

> some courts have taken the position that administrative agency orders equivalent to injunctions should be deemed final and appealable because they result in irreparable injury, even though there is no statute comparable to § 12–303(c)(1). In *Papago Tribal Util. Auth. v. Federal Energy*, 628 F.2d 235, 240 (D.C.Cir), *cert. denied*, 449 U.S. 1061 [101 S.Ct. 784, 66 L.Ed.2d 604] (1980), the United States Court of Appeals for the District of Columbia Circuit said with regard to administrative orders: "Only when parties face the prospect of irreparable injury, with no practical means of procuring effective relief after the close of the proceeding, might they be entitled to immediate review of a nonfinal order."

315 Md. at 397, 554 A.2d 1197.

In *Holiday Spas*, the order requiring Holiday to post notices and to provide men and women "with at least a substantially similar opportunity to engage in aerobic dance classes within ten days" was held to have "inflicted upon Holiday sufficient irreparable injury to be deemed final." *Id.* at 399, 554 A.2d 1197.

In the case at bar, appellants contend that the consequences of being denied the opportunity to depose the agency's investigator and the two complainants were similar to those outlined in several cases cited by the Court in *Holiday Spas, supra.*

For example, in *Isbrandtsen Co. v. United States*, 211 F.2d 51 (D.C.Cir.), *cert. denied* 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954), a Federal Maritime Board order tentatively approved a dual rate system which was to go into effect in 48 hours. Although a hearing for permanent approval was scheduled for a future date, the impact was such that Isbrandtsen's business would suffer immediate harm. Likewise, in *Nevada Airlines, Inc. v. Bond*, 622 F.2d 1017 (9th Cir.1980), the Federal Aviation Administration suspended the airline's air carrier operating certificate pending a further appeal. The Ninth Circuit permitted immediate review because, practically speaking, Nevada's business would suffer immediate adverse harm. 315 Md. at 399, 554 A.2d 1197.

The Court of Appeals cited the following language from *Isbrandtsen*, 211 F.2d at 55, with approval:

Whether or not the statutory requirements of finality are satisfied in any given case depends not upon the label affixed to its action by the administrative agency but rather upon a realistic appraisal of the consequences of such action. "The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control."

315 Md. at 398, 554 A.2d 1197.

Appellant also relies on *County Comm'rs v. Schrodel*, 320 Md. 202, 211, 577 A.2d 39 (1990), in which the Court of Appeals held that the circuit court's order that did not simply postpone the trial but effectively stayed the condemnation action until the county obtained a permit to construct a landfill on the Schrodel's property was appealable under the collateral order doctrine.

We note first of all that the order appealed from in *Schrodel* was not issued by an administrative agency but was that of a court of law, as to which the collateral order doctrine is well settled. Secondly, the circumstances in *Schrodel* clearly satisfied the four requirements of an appealable collateral order.

In the case at bar, appellant was merely required to proceed through a hearing on the merits in which it would have been afforded an opportunity to cross-examine the persons it wished to depose. If appellant were to prevail at the hearing, there would be no reason to appeal; if unsuccessful, then it would have the right to raise the issue of denial of an opportunity to take the depositions. In any event, it is absurd to suggest that appellant suffered immediate and irreparable harm of such magnitude as described in the above-cited cases that would make the decision to deny pre-hearing discovery final and appealable.

### B.

On the issue of whether denying appellant the right to take an immediate appeal constituted a violation of its due process rights, we find *Maryland Department of Human Resources, Maryland Department of Health and Mental Hygiene, Harford County Health Department v. Bo Peep Day Nursery*, 317 Md. 573, 565 A.2d 1015 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1784, 108 L.Ed.2d 786 (1990), dispositive.

In *Bo Peep*, prior to a hearing on the merits, the agency's hearing officer denied appellee's request for discovery by way of psychological interview of the alleged victims by an expert selected by appellee. None of the alleged victims of child abuse had testified at any of the proceedings.[1] Instead, their out-of-court statements were admitted through their parents and others who had spoken to them. The

---

**1.** Unlike the instant case, the appeal in *Bo Peep* was filed subsequent to the agency's final order revoking their day care operator license.

circuit court found that since the children's statements were "foundational," Bo Peep's request for such pre-trial discovery would have afforded them a *"meaningful* opportunity to test the credibility of the out-of-hearing statements." Although it recognized that the hearing examiner had no authority to order the type of discovery requested by Bo Peep, the circuit court nevertheless concluded that under those circumstances the hearing officer should not have considered any of the evidence which was dependent on the foundational out-of-hearing statements where circumstances prevented an opportunity to challenge.

The circuit court remanded the revocation order, concluding that the agency's denial of the discovery request violated appellee's constitutional right to procedural due process. The Court of Appeals reversed, holding that a straightforward application of the principles of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), demonstrated that due process had not been violated. 317 Md. at 596–97, 565 A.2d 1015.

Quoting *Mathews, supra,* 424 U.S. at 334–35, 96 S.Ct. at 903, the Court of Appeals said:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Bo Peep,* 317 Md. at 596, 565 A.2d 1015. The Court further stated:

> Before examining the balancing test in operation, one should note the different elements of the adversary process which may be required as part of the "due process" which must be afforded to an individual when the govern-

ment deprives him of life, liberty or property. The essential elements are: (1) adequate notice of the charges or basis for government action; (2) a neutral decision-maker; (3) an opportunity to make an oral presentation to the decision-maker; (4) an opportunity to present evidence or witnesses to the decision-maker; (5) a chance to confront and cross-examine witnesses or evidence to be used against the individual; (6) the right to have an attorney present the individual's case to the decision-maker; (7) a decision based on the record with a statement of reasons for the decision. (Quoting 2 R. Rotunda, J. Nowak & N. Young, *Treatise on Constitutional Law, Substance and Procedure* § 17.8, at 250 (1986).) [Footnote omitted.]

The authors list six additional procedural safeguards, including "a right to pre-trial discovery of evidence," which the authors state "tend to appear only in connection with criminal trials or formal judicial process of some type."

*Id.* at 597, 565 A.2d 1015.

There is no liberty interest or property interest at stake in the case *sub judice*. The only private interest to be affected is appellant's ability to take three depositions prior to the hearing. Appellant contends that the right to take depositions and to ˙propound interrogatories is the only type of discovery that will allow it to find out what the complainants will say when they testify.

"A basic tenet of fair play in administrative proceedings [citations omitted] is the right of a party to be given adequate notice of the nature of the proceedings [citations omitted] in order that he may prepare his defense. [Citations omitted]." *Ferguson v. United Parcel Service*, 270 Md. 202, 206, 311 A.2d 220 (1973), *cert. denied*, 415 U.S. 1000, 94 S.Ct. 1602, 39 L.Ed.2d 895 (1974). We note at the outset that appellant was fully apprised of the basis for the Commission's action in the instant case through written findings outlining the allegations of the complaints, a summary of appellant's position, a summary of the investigation, and the Commission's conclusion. Appellant also re-

ceived copies of the Statement of Charges prior to the scheduled hearing.

Additionally, appellant was provided with an 11–page order from the hearing examiner responding to appellant's twelve pre-hearing motions. Although appellant requested a hearing on each motion, the hearing examiner found that pursuant to COMAR 14.03.01.07G(5) all motions are to be decided by the hearing examiner without oral argument unless the hearing examiner determines otherwise. In the case *sub judice*, the hearing examiner determined that there was no need for hearings on the motions. Likewise, appellant was provided with a written order from the appeal board setting forth its findings.

A hearing on the merits has yet to be held. There is not the slightest indication that appellant will not be afforded all the protections that ordinarily satisfy due process requirements in contested administrative law cases. *See Department v. Bo Peep*, 317 Md. 573 at 598, 565 A.2d 1015.

The second factor to be weighed per *Mathews v. Eldridge* is "the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335, 96 S.Ct. at 903. In *Bo Peep*, the Court found that the value was minimal. We are of the same opinion in the case at bar. Appellant will have every opportunity to cross-examine the very people it sought to depose. Additionally, it was sufficiently informed of the allegations, the ensuing investigation, and the Commission's conclusions prior to the hearing, enabling it to present its rebuttal.

The third consideration under *Mathews v. Eldridge* is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335, 96 S.Ct. at 903. In *Bo Peep*, 317 Md. at 601–602, 565 A.2d 1015, the Court stated the following:

> Also weighing heavily against Bo Peep's request for implementation of an additional procedure is that the requested procedure was not within the power of the

hearing officer. A court adjudicating a property interest in a civil matter has no authority to compel a pretrial psychological examination of a nonparty witness, and we would be ill advised to create that right in administrative proceedings by a fiat on constitutional grounds.

Although the requested pre-hearing discovery in the case *sub judice* is within a court's power to compel, Rule 2–432, we are satisfied that the circuit court did not deprive appellant of due process of law in dismissing its appeal. Under the facts of this case, to create a right of immediate appeal of pre-hearing discovery orders would unnecessarily burden an already time consuming process with additional procedural steps. Appellant will not suffer any immediate or irreparable harm in being required to proceed with a hearing on the merits, since it will be afforded every opportunity to appeal an adverse ruling at its conclusion. Accordingly, we affirm the circuit court's ruling.

## II

The length of this opinion is attributable to the ingenuity and skill of appellant's counsel in fashioning and presenting issues that require our consideration. Certainly it is not attributable to any merit in any of appellant's contentions. There is none. Succinctly stated, under no stretch of the imagination can a ruling by an administrative agency that its hearing officer lacks the power to issue orders to compel depositions or to enforce discovery be deemed to be a *final* order that can be appealed to a circuit court. It is simply preposterous to assert that such a ruling is analogous to an interlocutory injunction that may cause such immediate and irreparable harm that it must be appealable. It is equally preposterous to claim that denial of an opportunity to appeal an order denying pre-hearing discovery is a denial of due process. To allow judicial review of such interlocutory rulings by an administrative tribunal would make a shambles of administrative procedure.

We are persuaded, after reviewing the record, that making a shambles of the administrative procedure in this case was precisely what appellant and its counsel set out to do.

We reject appellant's contention that it acted in good faith in presenting non-frivolous, legitimate, and innovative, even if questionable, argument. In doing so, we are mindful that Rule 1–341 was not intended to punish legitimate advocacy, *Legal Aid Bureau v. Farmer*, 74 Md.App. 707, 722, 539 A.2d 1173 (1988), or to force abandonment of questionable or innovative causes, *Legal Aid v. Bishop's Garth*, 75 Md.App. 214, 224, 540 A.2d 1175, *cert. denied*, 313 Md. 611, 547 A.2d 188 (1988), or to penalize "exploration beyond existing legal horizons." *Dent v. Simmons*, 61 Md.App. 122, 128, 485 A.2d 270 (1985). It is obvious to us that appellant's entire course of conduct in filing a spate of pre-hearing motions, an appeal to the appeal board from the hearing officer's denial of certain of those motions, an appeal to the circuit court from the appeal board's ruling, and an appeal to this Court from the judgment of the circuit court was undertaken in bad faith, for the purpose of delaying, prolonging, and obstructing the proceedings in the hope that the Commission or the complainants might eventually abandon the cases. In short, we are convinced that this appeal, being utterly unjustified, amounts to an abuse of the judicial process, and it is for that reason that we grant appellee's motion for an award of counsel fees under Md.Rule 1–341, which provides that in any civil action,

> if the court finds that the conduct of any party in maintaining or defending any proceedings was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

Counsel for appellee submitted an affidavit avowing that he spent a total of thirteen hours in reviewing the circuit court file, researching, writing the appellee's brief,

and preparing for and participating in oral argument on this appeal. Not surprisingly, appellant does not challenge those averments. And we certainly regard that claim as to the time spent by counsel as not only reasonable but downright modest. Appellee's initial request was for a counsel fee of $2,275 representing $175.00 per hour, claiming that hourly rate to be reasonable for appellate advocacy. Appellant challenges the reasonableness of that sum, commenting on the short time that appellee's counsel had been at the bar.

We shall not attempt to determine whether a fee of $175 per hour, if actually charged and paid, would have been reasonable, considering counsel's experience and skill as an appellate advocate. The blunt fact is that appellee is a governmental agency, and it was represented on this appeal by its salaried employee, an in-house counsel, who was not paid $175 per hour for his services in connection with this appeal.

If a statute or rule permits the allowance of a reasonable attorney's fee (as, for example, Title 42, § 1988 of the United States Code in civil suits for violation of constitutional rights), it is not unreasonable to base the fee on "prevailing market rates" in the community, whether the prevailing party is represented by retained counsel, in-house counsel or non-profit counsel. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Appellee cites several cases in support of its prevailing market rate theory. In *Blum v. Stenson, supra,* the United States Supreme Court endorsed fee awards based on market rates pursuant to the interpretation and legislative history of the "attorney's fee statute," Title 42 U.S.C. § 1988 (1976 ed. Supp. V), which authorizes district courts to award reasonable attorney's fees to prevailing civil rights litigants.[2] In *Napier v. Thirty or More Unidentified Fed.*

---

2. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United

*Agents,* 855 F.2d 1080 (3rd Cir.1988), attorney's fees based on market rates were awarded pursuant to Fed.R.Civ.P. 11, the federal counterpart of Md.Rule 1–341.[3] According to *Napier,* "[w]hat constitutes 'reasonable expenses' and 'a reasonable attorney's fee' within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation." *Id.* at 1091 (quoting *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 879 (5th Cir.1988) (*en banc*)). *See also United States v. Kirksey,* 639 F.Supp. 634 (S.D.N.Y.1986); *Blue v. U.S. Dept. of Army,* 914 F.2d 525 (4th Cir.1990).

Finally, in *Piljan v. Mich. Dept. of Social Services,* 585 F.Supp. 1579 (1984), with respect to an award of attorney's fees in a case involving employment discrimination, the Court held that the award of attorney's fees was appropriate to assure that the deterrent purpose of an award in favor of a defendant in a Title VII case was respected.

It is clear that the above-cited federal cases, awarding market rate counsel fees, do so for various reasons, not the least of which is the desire to impose a penalty as a deterrence for reprehensible conduct. The language of the statute or rule under which such awards were made is broad enough to permit the award of counsel fees that are not limited to compensation. Md.Rule 1–341, however, authorizes the court only to order the offending party or attorney to reimburse the other party for the costs and expenses incurred in opposing the improper action. It does not speak of imposing sanctions, and therefore does not suggest, as does Fed.Civil Rule 11, that its purpose is to

States, a reasonable attorney's fee as part of the costs." *Blum v. Stenson,* 465 U.S. at 888, 104 S.Ct. at 1543.

**3.** Fed.Civil Practice Rule 11 permits the court, if a pleading, motion, or other paper is filed in bad faith or for any improper purpose, to impose upon counsel and/or the represented party an appropriate sanction, "which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee."

punish. Nor does it provide for an award of reasonable counsel fees, as does U.S.C. Title 42, § 1988; it provides for reimbursement of expenses, including reasonable counsel fees, actually incurred.

We recognize that when in-house counsel performs legal services in prosecuting or defending a civil action the employer does incur expenses for those services, because the salaried time spent by counsel on the case could have been spent performing other services for the employer. The fees charged by independent counsel include the attorney's overhead: rent, utilities, secretarial and other assistance, maintenance of a library, supplies, postage, etc. An agency or firm represented by in-house counsel also has expenses for logistical support for the attorneys. It may be difficult to determine and prove the actual cost and expense to the employer for each hour of its counsel's legal services in order to recover those expenses when such recovery is permitted by rule or statute. But that difficulty does not permit us to ignore the fact that Rule 1–341 permits recovery for actual expenses incurred, not for an amount that would have been incurred had the party retained outside counsel who charged an amount that the Court would accept to be a reasonable fee.

Recognizing that we might not allow recovery based upon "market rates," appellee submitted a supplementary affidavit supporting an alternate basis for its claim. That affidavit reduces to an hourly rate counsel's annual salary and other financial benefits ($26.72), the cost of support staff ($14.82), and other administrative and operating costs ($8.36). The claimed expense thus computed, $648.70 ($49.90 per hour for the 13 hours spent on the appeal itself), has not been disputed by appellant and is certainly reasonable by any standard. We shall grant it.

Appellee also seeks counsel fees, at the same rate, for seven hours devoted to the preparation of its motion and amended motion for counsel fees. That we shall not grant. Rule 1–341 provides for recovery of expenses incurred in opposing the unjustified or bad faith maintenance or de-

fense of a proceeding. It does not provide for expenses incurred in asserting the claim under the rule except, perhaps, to the extent that the offending party resists the claim for counsel fees without substantial justification for doing so. That is not the case here. In this case, although there was no substantial justification for taking and maintaining the appeal itself, there was some justification for resisting appellee's claim under Rule 1–341. It was for an improper amount, based upon a market rate for counsel fees, which we rejected. Appellee's amended motion for counsel fees was also resisted, but it too asserted an alternative claim for a market rate, albeit a lesser rate of $125 per hour.

For the reasons set forth above, we shall, pursuant to Rule 1–341, order appellant and its counsel to pay to appellee the sum of $648.70 as its reasonable expense for counsel fees.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.

PURSUANT TO MD.RULE 1–341, APPELLANT AND ITS COUNSEL ARE ORDERED TO PAY TO APPELLEE ATTORNEY'S FEES IN THE AMOUNT OF $648.70.