978 A.2d 839

**Michael C. WORSHAM**

v.

**Robert GREENFIELD, et ux.**

**No. 1810, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Aug. 27, 2009.

324

Michael C. Worsham, Forest Hill, for Appellant.

Thomas P. Ryan (Amy L. Leone, McCarthy Wilson, LLP, on brief), Rockville, for Appellee.

Panel: KRAUSER, C.J., EYLER, JAMES R. and KARWACKI, ROBERT L. (Retired, specially assigned), JJ.

EYLER, JAMES R., J.

The Circuit Court for Harford County, after making the requisite finding that the plaintiff maintained a suit without substantial justification, required the plaintiff to pay a defendant attorney's fees, expenses, and costs attributable to the defendant's defense of the plaintiff's suit. The principal issue presented on this appeal is whether a defendant has "incurred" attorney's fees, expenses, or costs within the meaning of Md. Rule 1–341 when the defendant's fees, expenses, and costs were paid by its liability insurance carrier.[1] We shall affirm the judgment of the circuit court.

---

1. Md. Rule 1–341 provides:

 In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification the court may require the offending party or the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorney's fees, incurred by the adverse party in opposing it.

## Factual and Procedural Background

On August 25, 2003, appellant, Michael C. Worsham, *pro se*,[2] filed a six-count complaint in circuit court against four of his neighbors, including Robert and Romualda Greenfield, appellees.[3] The other two defendants are not involved in this appeal. The counts alleged malicious prosecution for criminal charges brought against appellant on February 5, 2000, malicious prosecution for criminal charges brought in October of 2000, defamation, false light/invasion of privacy, civil conspiracy, and aiding and abetting.[4] Appellant subsequently dismissed the defamation count because it was barred by the statute of limitations. On September 30, 2004, the circuit court (Carr, J.) granted summary judgment in favor of three of the defendants, including Mrs. Greenfield. The malicious prosecution counts, as they related to malicious destruction of property over $300, and which applied solely to Mr. Greenfield, survived. In November 2004, the malicious prosecution counts went to trial, and at the close of appellant's case, the circuit court (Plitt, J.) granted Mr. Greenfield's motion for judgment.

Appellant appealed to this Court, and we affirmed the judgment of the circuit court. Appellant filed a petition for writ of certiorari, which the Court of Appeals denied.

On April 27, 2006, appellees filed a motion in circuit court under Md. Rule 1–341 for attorneys fees, expenses, and costs.

---

**2.** Appellant is a member in good standing of the Maryland bar. Appellant has represented himself throughout these proceedings.

**3.** This complaint grew out of an altercation between appellant and Mr. Greenfield, after which appellant and Mr. Greenfield filed an application for statement of charges against each other. The State filed charges, but they were later nolle prossed. The State's Attorney's Office subsequently brought additional charges against appellant, specifically, second degree assault and malicious destruction of property. At the ensuing trial, the jury acquitted appellant of malicious destruction of property. The jury hung on the assault charge, and the court declared a mistrial.

**4.** The malicious prosecution counts were filed against Mr. Greenfield only. All other counts were filed against all named defendants.

The motion was supported by an affidavit filed by Thomas Patrick Ryan, a member of the law firm, McCarthy Wilson LLP. The affiant stated that the law firm had been retained by Erie Insurance Exchange (hereinafter "Erie Insurance") to represent appellees in the suit filed by appellant, and that the law firm had done so. The affiant further stated that attorney's fees in the amount of $38,693.00 and expenses and costs in the amount of $1,571.48 had been incurred in defending appellees.

On September 29, 2006, appellant filed his own motion under Rule 1–341, seeking an award of costs in the amount of $10.00 against appellees' counsel. In addition to seeking sanctions against attorneys with the McCarthy Wilson firm, appellant sought sanctions against H. Wayne Norman, Jr., an attorney who represented appellees with respect to the uninsured portion of the damages sought by appellant in his underlying complaint.

Following a hearing, the circuit court (Plitt, J.), in an opinion and order dated February 21, 2007, denied Mr. Greenfield's motion but, finding that Mrs. Greenfield had been joined in the action without substantial justification, granted her motion. The court also concluded that the amount of fees, costs and expenses would be determined at a later hearing. The court denied appellant's motion, characterizing the portion of it directed at Wayne Norman as "frivolous and unprofessional."

On June 18, 2007, appellant filed a motion to recuse Judge Plitt from presiding over the hearing to determine the specific amount of fees incurred by Mrs. Greenfield.

At all pertinent times, during the pendency of the underlying case and the Rule 1–341 motions practice, appellees were and are represented by counsel selected and paid by Erie Insurance.

At a July 11, 2007 hearing, Judge Plitt denied appellant's motion to recuse and then heard argument concerning the amount of an award of fees, costs, and expenses to Mrs. Greenfield. On August 29, 2007, Judge Plitt docketed a

written opinion and judgment awarding Mrs. Greenfield $3,613.13 for attorneys' fees, costs, and expenses. The circuit court arrived at the amount of the award by reviewing billing records and determining the portion of fees, costs, and expenses attributable to Mrs. Greenfield's defense, prior to September 30, 2004, the date summary judgment was entered in her favor.

Appellant filed motions to alter or amend and to stay enforcement, both of which were denied.

## Questions Presented

As phrased by appellant, the questions are:

1. Whether the trial court erred in granting Romualda Greenfield's Motion under Rule 1–341, and awarding her a judgment of $3,613.13 for attorney's fees she admits she never paid.

2. Whether the trial judge who heard the underlying criminal trial erred in not recusing himself as the judge over the subsequent civil malicious prosecution trial and Motion under Rule 1–341.

3. Whether Worsham's Rule 1–341 [s]hould have been granted.

## DISCUSSION

### I.

Appellant contends that Mrs. Greenfield lacked standing to file a motion under Md. Rule 1–341 because all of the fees, costs, and expenses she sought, including the $3,613.13 awarded to her, were paid for by the Greenfields' insurer, Erie Insurance. Appellant argues that a party who suffered no damages cannot seek or be awarded damages that they never suffered, referring us to *Seney v. Seney*, 97 Md.App. 544, 631 A.2d 139 (1993), in support of his position. Appellant adds that, under the definition of "incurred" used by the trial

court,[5] Mrs. Greenfield never incurred attorney's fees, costs, and expenses because she never became or was at risk of becoming liable for such fees, costs, and expenses. Appellant also claims that the trial court failed to consider the policy behind Md. Rule 1–341. He states that parties and their insurers are different entities with different motivations and that the trial court erred in equating the parties with their insurance company.

Appellant further contends that Mrs. Greenfield's motion was untimely. He notes that she waited until after Mr. Greenfield's trial, the appeal to this Court, and the denial of Mr. Worsham's petition for writ of certiorari before filing her motion. He asserts that if Mrs. Greenfield truly felt aggrieved, she should have filed the motion under Rule 1–341 before the appellate proceedings. He thus claims that Mrs. Greenfield's motion is untimely under a reasonableness standard.

Finally, appellant contends that there was an insufficient showing of lack of substantial justification or, if there was, the court abused its discretion in making an award.

Appellant does not challenge the court's methodology in determining the amount of the award, as distinguished from entitlement, which he does challenge. Appellant also does not contend that the court failed to make findings or failed to exercise its discretion. As noted above, he does contend that the findings were unsupported and that the court abused its discretion.

Mrs. Greenfield responds that the purpose of Md. Rule 1–341 is to prevent parties and/or attorneys from abusing the judicial process by filing or defending actions without substantial justification or in bad faith. Mrs. Greenfield asserts that the focus of the Rule is on the offending party and/or attorney

---

5. The circuit court stated that "**Webster's New Collegiate Dictionary** defines incur as: 'to run into, to become liable or subject to.' **Black's Law Dictionary, 5th Edition,** defines incur as: 'to have liability cast upon one by an act or operation of law, as distinguished from contract, where the party acts affirmatively. To become liable or subject to.' "

and his or her actions. As a result, she claims that whether an aggrieved party personally pays the attorney's fees or whether they are paid by a third party is irrelevant. Mrs. Greenfield states: "It does not serve the purpose of the Rule to limit its application to those instances where the litigant himself and not his insurer or some other third party paid the costs of representing him against the abusive litigation."

## A.

In the present case, we are asked to interpret Maryland Rule 1–341, which provides that a court, after making the necessary findings, may require the offending attorney or party to pay to the adverse party fees, costs, and expenses "incurred" by the adverse party.

In *Greco v. State,* 347 Md. 423, 428–29, 701 A.2d 419 (1997) (citations and footnote omitted), the Court of Appeals explained:

> To interpret rules of procedure, we use the same principles and canons of construction as are used to interpret statutes. When construing a rule, the Court first looks to the text of the rule, giving those words their ordinary and natural meaning. When the words are clear and unambiguous, ordinarily our inquiry ends. When, however, the language of the rule is ambiguous, we look elsewhere to discern the legislative intent. It then becomes necessary to survey the surrounding circumstances in which the rule was drafted to accurately discern the intent of the Court of Appeals in promulgating that rule.

*See also Long v. State,* 343 Md. 662, 668, 684 A.2d 445 (1996) ("We look to the rule's history to aid us in discerning the reasonable intendment of the language used in the light of the purpose to be effectuated.") (Citations omitted). "Yet the goal remains to give the rule its most reasonable interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used." *Greco,* 347 Md. at 429, 701 A.2d 419.

"Incur" has been defined as "To suffer or bring on oneself (a liability or expense)." *Black's Law Dictionary* 771 (7th ed.1999). "Liability" has been defined in part, as "A financial or pecuniary obligation." *Id.* at 925. "Liable" has been defined, in part, as (of a person) subject to or likely to incur (a fine, penalty, etc.). *Id.* at 927. *Random House Webster's College Dictionary* 682 (1992) defines incur as "to become liable for: *to incur debts.*" "Liable" is defined as "legally responsible." *Id.* 781.

■ Appellant argues that Mrs. Greenfield did not incur fees, given the ordinary dictionary definition of the word. We disagree, and reading the Rule as a whole and in the context of its purpose, we conclude that the Rule is ambiguous as to whether a party must actually have paid the attorney's fees, costs, and expenses in order to have incurred them or whether they were paid by a collateral source. *See Twine v. State,* 395 Md. 539, 550, 910 A.2d 1132 (2006) ("If a statute has more than one reasonable interpretation, it is ambiguous.") (citation omitted); *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003) ("[B]efore judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute.")

Our research has uncovered no reported case law in this State determining, under Md. Rule 1–341, whether a party has incurred attorney's fees, costs, and expenses when the fees, costs, and expenses were paid by an insurer. Nevertheless, the principles discussed in the following cases, cited by appellant, are relevant to our analysis.

In *United States Health, Inc. v. State,* 87 Md.App. 116, 589 A.2d 485 (1991), *cert. denied* 324 Md. 69, 595 A.2d 482 (1991), the Maryland Commission on Human Relations denied United States Health's "profusion of motions" to compel depositions and enforce discovery because there was no statutory authority for the relief sought. *Id.* at 119, 589 A.2d 485. United States Health then filed a series of appeals. *Id.* at 119–20, 589 A.2d 485. First, United States Health appealed to the Commission's Appeal Board, which struck the notice of appeal

because an appeal did not lie from a ruling on pre-hearing discovery matters. *Id.* at 119, 589 A.2d 485. Second, it appealed to the Circuit Court for Baltimore City, which dismissed the appeal because there was no final order from the Commission. *Id.* at 119–20, 589 A.2d 485. Third, it appealed to this Court, which concluded that "under no stretch of the imagination" could the denial of the motions be considered a final order. *Id.* at 127, 589 A.2d 485. United States Health's claims were "simply preposterous[.]" *Id.* at 127, 589 A.2d 485.

We also concluded that the appeal to this Court was "utterly unjustified" and granted the Commission's motion for an award of counsel fees under Md. Rule 1–341. *Id.* at 128, 589 A.2d 485. The Commission sought attorney's fees at a rate of $175.00 per hour, which it claimed was a reasonable hourly rate for appellate advocacy. *Id.* This Court recognized, however, that the Commission is a governmental agency represented by a salaried employee, that is, in-house counsel, who was not paid $175.00 an hour for his services. *Id.* at 129, 589 A.2d 485. After reviewing a series of federal cases, we wrote:

It is clear that the above-cited federal cases, awarding market rate counsel fees, do so for various reasons, not the least of which is the desire to impose a penalty as a deterrence for reprehensible conduct. The language of the statute or rule under which such awards were made is broad enough to permit the award of counsel fees that are not limited to compensation. Md. Rule 1–341, however, authorizes the court only to order the offending party or attorney to reimburse the other party for the costs and expenses incurred in opposing the improper action. It does not speak of imposing sanctions, and therefore does not suggest, as does Fed. Civil Rule 11, that its purpose is to punish. Nor does it provide for an award of reasonable counsel fees, as does U.S.C. Title 42, § 1988; it provides for reimbursement of expenses, including reasonable counsel fees, actually incurred.

We recognize that when in-house counsel performs legal services in prosecuting or defending a civil action the employer does incur expenses for those services, because the

salaried time spent by counsel on the case could have been spent performing other services for the employer. The fees charged by independent counsel include the attorney's overhead: rent, utilities, secretarial and other assistance, maintenance of a library, supplies, postage, etc. An agency or firm represented by in-house counsel also has expenses for logistical support for the attorneys. It may be difficult to determine and prove the actual cost and expense to the employer for each hour of its counsel's legal services in order to recover those expenses when such recovery is permitted by rule or statute. *But that difficulty does not permit us to ignore the fact that Rule 1–341 permits recovery for actual expenses incurred, not for an amount that would have been incurred had the party retained outside counsel who charged an amount that the Court would · accept to be a reasonable fee.*

Recognizing that we might not allow recovery based upon "market rates," appellee submitted a supplementary affidavit supporting an alternate basis for its claim. That affidavit reduces to an hourly rate counsel's annual salary and other financial benefits (\$ 26.72), the cost of support staff (\$ 14.82), and other administrative and operating costs (\$ 8.36). The claimed expense thus computed, \$ 648.70 (\$ 49.90 per hour for the 13 hours spent on the appeal itself), has not been disputed by appellant and is certainly reasonable by any standard. We shall grant it.

*Id.* at 130–31, 589 A.2d 485 (emphasis added).

In *Seney v. Seney,* 97 Md.App. 544, 631 A.2d 139 (1993), Mr. Seney appealed an award of attorney's fees to Mrs. Seney's attorney, who had been hired on a contingency fee basis. *Id.* at 550, 631 A.2d 139. Mrs. Seney lost the case, and thus, under the contract, she was not liable for any attorney's fees. *Id.* Nonetheless, the trial court ordered Mr. Seney to pay \$10,000 of Mrs. Seney's attorney's fees. *Id.* at 546, 631 A.2d 139. Mr. Seney noted an appeal, and we concluded that the award was improper:

This court has emphasized that Rule 1–341 is not a sanctions rule in the same sense as Federal Rule of Civil

Procedure 11. It does not provide for a monetary award to punish a party that misbehaves. The Rule's purpose is to put a prevailing party in the same position as if the wrongful party's offending conduct had not occurred.

When a party takes money out of her pocket and gives it to the court or to her attorney because of the opposing party's substantially unjustified or bad faith actions, the court may order reimbursement of that money by the opposing party, or the opposing party's attorney, to the aggrieved party. "Rule 1–341 clearly permits a court to direct the payment of a sanction by the offending party, or attorney, or both of them. The rule directs, however, that payment be made to the adverse party, rather than to that party's attorney." *Talley v. Talley,* 317 Md. 428, 437 n. 3, 564 A.2d 777 (1989).

When, however, a party does not incur any expense for attorney's fees, those fees cannot be reimbursed. Mr. Evans [Mrs. Seney's attorney] took a calculated risk in entering into the contingent fee arrangement. He expected no fee for his services if he lost. He lost. Rule 1–341 does not offer him the opportunity to get from his client's opponents what he cannot get from his client.

We hold that Rule 1–341, in those rare cases when it is appropriate, only allows the court to award attorney's fees actually incurred by the moving party, and that when that party's attorney is not entitled to a fee under an agreement with the party, the court will not require that a fee be paid by an opposing party.

*Seney,* 97 Md.App. at 552–53, 631 A.2d 139 (footnotes and some citations omitted); *Beery v. Maryland Medical Laboratory, Inc.,* 89 Md.App. 81, 102, 597 A.2d 516 (1991) ("an award of counsel fees pursuant to Rule 1–341, despite our occasional use of the word 'sanction,' is not punitive but is intended merely to compensate the aggrieved party for their reasonable costs and expenses, including reasonable attorney's fees, actually incurred in opposing the unjustified or bad faith conduct"). *See also Zdravkovich v. Bell Atlantic–Tricon Leasing Corp.,* 323 Md. 200, 212, 592 A.2d 498 (1991) (the purpose of

Md. Rule 1–341 "is to deter unnecessary and abusive litigation"); *Major v. First Va. Bank–Central Md.,* 97 Md.App. 520, 530, 631 A.2d 127 (1993) ("This Court has emphasized that Rule 1–341 is not a sanctions rule in the same sense as Rule 11. It does not provide for a monetary award to punish a party that misbehaves. The rule's purpose is to put the wronged party in the same position as if the offending conduct had not occurred."); *Legal Aid Bureau, Inc. v. Farmer,* 74 Md.App. 707, 722, 539 A.2d 1173 (1988) ("Rule 1–341 represents a limited exception to the general rule that attorney's fees are not recoverable by one party from an opposing party. It is intended to prevent parties and lawyers from *abusing* the judicial process by filing or defending actions and proceedings 'without substantial justification' or 'in bad faith.' ") (Emphasis in original); *Bastian v. Laffin,* 54 Md.App. 703, 719, 460 A.2d 623 (1983) ("the rule is intended to compensate a defendant as well as a plaintiff for the consequences of the defined types of improper conduct by an opponent"). *See also Henriquez v. Henriquez,* 185 Md.App. 465, 482, 971 A.2d 345 (2009), not cited by the parties and filed after this case was fully briefed (filed May 8, 2009) (drawing a distinction between Md.Code (2006 Repl.Vol.), § 12–103 of the Family Law Article, which allows for an award of attorney's fees when the party is represented by a non-profit legal services organization that does not charge the litigant a fee for its representation, and Md. Rule 1–341, which "limits attorney's fees that can be awarded to fees 'incurred' by the party").

 The above cases establish that Rule 1–341 "permits recovery for actual expenses incurred" and not for the reasonable value of services rendered, in the absence of actual fees, costs, or expenses. While the nature of the offending conduct is relevant to the amount, the amount must be compensatory and not designed to punish the offending party. In the case before us, the fees, costs, and expenses were in fact paid on Mrs. Greenfield's behalf, and the amount of the award was premised on reimbursement of the amount paid.

The cases cited by appellees, while not squarely on point, are also relevant. The statutes at issue were designed to

address more specific situations, and certain types of litigation. Moreover, not all of the statutes in question addressed whether the litigation was brought or defended in bad faith. In contrast, Rule 1–341 was broadly drawn to address any case brought or defended in bad faith or without substantial justification. As we shall see in a moment, however, the scope of the Rule is very relevant to our ultimate conclusion.

Appellees rely on the following cases. *See Wilson v. General Services Admin.,* 126 F.3d 1406, 1408 (Fed.Cir.1997), addressing a claim for fees and expenses under the Equal Access to Justice Act, 5 U.S.C. § 504. The statute provides, in pertinent part, that "an agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses *incurred by that party* in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." (Emphasis added.). The court concluded that Wilson incurred legal fees even though its insurer was responsible for paying the fees because they were incurred on Wilson's behalf. *Id.* at 1409.

In *Poulard v. Lauth,* 793 N.E.2d 1120, 1122 n. 2 (Ind.Ct. App.2003), the question was whether a defendant was entitled to an award of attorney's fees even though the fees were paid by an insurer. The claim was made under a so called SLAPP statute [strategic lawsuit against public participation], placing the financial burden on the party abusing the judicial system by bringing a SLAPP lawsuit. *Id.* at 1123. The statute, appearing in Ind.Code § 34–7–7–7, provided: "A prevailing defendant on a motion to dismiss is entitled to recover reasonable attorney's fees and costs." *Id.* The court observed that the SLAPP statute was "intended to reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," and upheld the award of fees. *Id.* at 1124.

In *Scott v. Irmeger*, 859 N.E.2d 1238, 1241 (Ind.Ct.App. 2007), the court concluded that a defendant may incur attorney's fees even though a third party, in that case, an insurer, pays such fees on the defendant's behalf. The statute at issue, Ind.Code § 34–50–1–6, addressed qualified settlement offers and provided that if a recipient did not accept a qualified settlement offer and the final judgment was less favorable to the recipient than the terms of the offer, the court shall award attorney's fees, costs, and expenses to the offeror upon the offeror's motion. The fees, costs and expenses were limited to those "incurred" after the date of the offer. The court observed that the purpose of the statute under which the fees were awarded was "to provide the offering parties with leverage to encourage the other party to seriously evaluate the merits of his or her case....," and if "these parties were unable to depend on the ... statute for leverage to encourage the opposing party to evaluate the merits of the claim, the practical effect would be to undermine the entire purpose behind the ... statute." [6]

As alluded to earlier, the purpose of Rule 1–341 compels us to conclude that fees, costs, and expenses incurred by a party opposing a proceeding that was maintained in bad faith or without substantial justification are awardable even though paid by the party's insurer. The Rule clearly applies to "any proceeding" and clearly applies to parties who maintain or defend such a proceeding. *Bastian v. Laffin, supra* at 719, 460 A.2d 623. The Rule's purpose is to deter abuse of the judicial process and does so by compensating a party who opposes a party proceeding in bad faith or without substantial justification.

---

6. It appears, however, that Indiana awards attorney's fees, costs, and expenses in situations in which Maryland does not, at least in the Rule 1–341 context. For example, in *Beeson v. Christian*, 594 N.E.2d 441, 443 (Ind.1992), the Supreme Court of Indiana upheld an award of attorney's fees even though the defendant's attorney testified that he would not charge his client any fees for the work done on the appeal. This is contrary to *Seney*, a Rule 1–341 case.

In today's world, one in which liability insurance, which frequently includes the cost of defense, is extremely widespread and even mandated in certain situations, a contrary conclusion would result in the Rule never applying to persons maintaining a proceeding against a party who is insured but always applying to parties defending a proceeding. We do not believe that result was intended by the Court of Appeals. We are mindful of the caselaw observing that Rule 1–341 is not a sanctions rule in the same sense as Federal Rule of Civil Procedure 11. Thus Rule 1–341 is designed to compensate, and while entitlement to an award is based on the offending party's conduct, the amount awarded is not based on the degree of offensiveness. The purpose of the Rule is fulfilled, however, and the existing caselaw is not violated if the party receiving the award, in this instance, Mrs. Greenfield, pursues the sanction on behalf of the insurer, in this instance, Erie Insurance.

In certain cases, an insurer may have a contractual right, by way of subrogation or assignment, to pursue an insured's rights or compel an insured to pursue such rights on its behalf. In the case before us, we do not have a copy of the policy. Nevertheless, we conclude that the principle of equitable subrogation applies and that Mrs. Greenfield had the right to pursue the claim on behalf of Erie Insurance.[7] For similar reasons of equity and public policy, the Court of Appeals applied the principle of equitable subrogation in an analogous situation. *See Fireman's Fund Ins. Co. v. Continental Ins. Co.,* 308 Md. 315, 519 A.2d 202 (1987). In that case, the insured had a comprehensive general liability policy with Continental Insurance Group with a limit of $500,000 per occurrence. The insured also had an excess insurance policy with Fireman's Fund Insurance Company that covered liability in excess of $500,000 up to its limit of $2,000,000. A former

---

7. Appellant did not object to the failure to pursue sanctions in the name of or to the use of Erie Insurance; thus any objection on that basis is not before us. See Md. Rule 2–201. Erie Insurance is the real party in interest, by virtue of being subrogated to the rights of its insured, and could have pursued the claim in its own name.

employee sued the insured for defamation and sought fifteen million dollars in compensatory and fifteen million dollars in punitive damages. Continental Insurance Group defended the insured but repeatedly refused to settle within its policy limits. A jury awarded the former employee one million dollars, and the former employee settled with the insured for $900,000. Continental Insurance Group paid its policy limit of $500,000, and Fireman's Fund Insurance Company paid $400,000. *Id.* at 317, 519 A.2d 202. Fireman's Fund Insurance Company filed an action against Continental Insurance Group, alleging bad faith refusal to settle within its policy limits. To the extent pertinent, it based its claim on equitable subrogation. *Id.* Under then existing Maryland law, the insured had a cause of action against its primary insurer for bad faith refusal to settle, and the Court of Appeals held that equitable subrogation permitted the excess insurer to pursue the insured's claim against the primary insurer. *Id.* at 319, 519 A.2d 202. Had the primary insurer not acted in bad faith, Fireman's Fund Insurance Company would not have paid $400,000. In the case before us, Erie Insurance paid monies ($3,613.13) which it would not have paid absent appellant proceeding without substantial justification. For reasons of equity, to fulfill the purposes of Rule 1–341, we recognize the right of Erie Insurance, through its insured, to pursue a claim for fees, costs, and expenses under Rule 1–341. The award is compensatory in nature, because it reimburses the payor for monies incurred as a result of a violation of Rule 1–341.

## B.

Appellant also contends that Mrs. Greenfield's motion was untimely. Appellant argues that a reasonableness standard applies under Rule 1–341 and that the delay in filing the motion after summary judgment was granted was unreasonable. We disagree.

In *Litty v. Becker*, 104 Md.App. 370, 376–78, 656 A.2d 365 (1995), the question was whether a party could seek sanctions under Rule 1–341 after judgment was entered, appealed, and

the appeal concluded. In answering in the affirmative, we stated:

> [W]e believe that a trial court may entertain a motion for costs even though the principle suit had been concluded. We therefore conclude that a motion for costs pursuant to Md. Rule 1–341 is an "independent proceeding supplemental to the original proceeding and a trial court is not deprived of jurisdiction" whenever costs are sought. See *Id.* Although "the only time limitation arises out of those equitable considerations that a judge may weigh in his discretion," *Hicks v. Southern Maryland Health Systems Agency*, 805 F.2d 1165, 1167 (4th Cir.1986), the judge's discretion must be exercised.

\* \* \*

In the case *sub judice*, the trial court declined to consider appellants' motions because they were not filed until after the appeal had been concluded and "more than thirty (30) days after the Order of the Court of Appeals denying the Petition for Writ of Certiorari." Essentially, the trial court first concluded that it was unable to consider issues raised by appellants' motions for costs because they had not been raised prior to the appeal and were "therefore not specifically reserved as an issue collateral to those on appeal." Although this is consistent with the comments of Niemeyer and Schuett in the Maryland Rules Commentary, supra, we hold that it is precisely because a motion for costs pursuant to Rule 1–341 is an "independent proceeding supplemental to the original proceeding" that it may be filed and considered by the trial court after the appeal has been concluded. In the case *sub judice*, the trial court erred in concluding that it was precluded from considering appellants' motions because they had not previously been raised or reserved for its consideration. Thus, the trial court's failure to exercise its discretion is an abuse of discretion. *Maus v. State*, 311 Md. 85, 532 A.2d 1066 (1987).

We perceive no merit in appellant's contention.

## C.

Appellant's remaining contention as to issue I is that the court's finding was clearly erroneous and it abused its discretion. Appellant argues that existing caselaw demonstrates that an award will be upheld only against parties who use litigation for purposes of delay, to obtain a tactical advantage in related proceedings, or when cases or statutes establish as a matter of law that the party had no legal basis for proceeding.

Even though in connection with other issues we have discussed the standard of review for an award of attorney's fees under Md. Rule 1–341, we shall repeat it.

> [B]efore imposing sanctions in the form of costs and/or attorney's fees under Rule 1–341, the judge must make two separate findings that are subject to scrutiny under two related standards of appellate review. First, the judge must find that the proceeding was maintained or defended in bad faith and/or without substantial justification. This finding will be affirmed unless it is clearly erroneous or involves an erroneous application of law. Second, the judge must find that the bad faith and/or lack of substantial justification merits the assessment of costs and/or attorney's fees. This finding will be affirmed unless it was an abuse of discretion.

*Inlet Assocs. v. Harrison Inn Inlet, Inc.,* 324 Md. 254, 267–68, 596 A.2d 1049 (1991).

 Mrs. Greenfield was named as a defendant in counts three through six, alleging defamation, invasion of privacy, conspiracy, and aiding and abetting. The circuit court observed that the only evidence relating to Mrs. Greenfield was that she came outside sometime during the altercation between appellant and Mr. Greenfield. Appellant references the application for statement of charges that he filed against Mr. Greenfield, in which he described the altercation between them, but that statement contains no reference to Mrs. Greenfield. We agree with the circuit court that there was not one scintilla of evidence that Mrs. Greenfield committed any of the torts alleged. A proceeding is not substantially justified if it

lacks any basis in law or fact. *Johnson v. Baker,* 84 Md.App. 521, 529, 581 A.2d 48 (1990). Thus, the circuit court's finding that appellant lacked substantial justification for proceeding against Mrs. Greenfield was not clearly erroneous, and the court did not abuse its discretion.

## II.

Appellant next claims that Judge Plitt erred in denying his motion for recusal from presiding over the civil malicious prosecution trial and motions hearing under Md. Rule 1–341. Appellant asserts that this was error because Judge Plitt also presided over appellant's criminal trial. Appellant states:

> The fact that a criminal trial occurred means the trial judge denied the criminal defendant's motions to dismiss. When that same judge later presides over a malicious prosecution trial involving the same underlying criminal case, the judge is being asked to rule that the same judge's own earlier decisions to allow the criminal case to go to trial were wrong.

Appellant also claims Judge Plitt's "bizarre and outlandish ruling" against him in another case also demonstrates bias. He asserts that, in that case, Judge Plitt, "for absolutely no reason, required Worsham to produce five years [of] state and federal income tax returns in a simple case involving three telemarketing calls which were not in any real dispute."

Mrs. Greenfield responds that there are no allegations of personal animosity or other grounds for recusal. Rather, she asserts, appellant's sole ground for recusal was that Judge Plitt had presided over appellant's criminal trial as well as other trials and hearings involving appellant.

In *South Easton Neighborhood Ass'n v. Town of Easton,* 387 Md. 468, 499, 876 A.2d 58 (2005), the Court of Appeals discussed the burden on the party seeking recusal:

> [T]he party moving for recusal bears a "heavy burden to overcome the presumption of impartiality." *Attorney Grievance Comm'n v. Blum,* 373 Md. 275, 297, 818 A.2d 219, 232 (2003) quoting *Attorney Grievance Comm'n v. Shaw,*

363 Md. 1, 11, 766 A.2d 1028, 1033 (2001). Judges "occupy a distinguished and decisive position ... [requiring them] to maintain high standards of conduct." *Jefferson–El v. State,* 330 Md. 99, 106, 622 A.2d 737, 741 (1993) (citations omitted). Unless grounds for mandatory recusal are met, a judge's decision not to recuse himself or herself will be overturned only upon a showing of an abuse of discretion. *Surratt v. Prince George's County,* 320 Md. 439, 465, 578 A.2d 745, 757–58 (1990). An abuse of discretion standard is objective—"whether a reasonable member of the public knowing all the circumstances would be led to the conclusion that the judge's impartiality might reasonably be questioned." *In re Turney,* 311 Md. 246, 253, 533 A.2d 916, 920 (1987). Recognized grounds implicating possible partiality include a significant financial interest in a party or outcome, a prejudicial relationship as an attorney with a party or counsel for a party, or a personal bias or prejudice concerning a party. Md. Rule 16–813, Canon 3C.

■ In the present case, the fact that Judge Plitt presided over other cases and proceedings involving appellant did not require his recusal. *See generally Boyd v. State,* 321 Md. 69, 76, 581 A.2d 1 (1990) (information acquired by trial judge from prior judicial proceedings involving co-defendants is not personal knowledge or bias requiring disqualification); *Nash v. State,* 69 Md.App. 681, 686, 519 A.2d 769 (1987) (where trial judge presided over earlier, related trial involving the same defendant, "even where judge is to be the fact finder, there is no *per se* rule requiring recusal"). In addition, appellant failed to demonstrate any personal bias by Judge Plitt. He, therefore, failed to meet the heavy burden to overcome the presumption of impartiality.

### III.

■ Appellant next asserts that the circuit court erred in denying his motion for $10.00 filed under Md. Rule 1–341. He asserts that the importance of his motion was to deter the Greenfields from making their own bad faith motions and to

highlight under the Rule how a party must incur fees. On appeal, appellant's argument is limited to an assertion that Mr. Greenfield's motion for fees, costs, and expenses was filed in bad faith or without substantial justification. He explains that Mr. Greenfield's motion was in bad faith because he did not personally incur any fees and also because appellant's claim against him survived summary judgment. Regarding the requirement that a party incur fees, appellant recognizes that, because he represented himself, ordinarily, he would not be considered to have incurred attorney's fees. That is why, he claims, he sought only $10.00.

Here, Mr. Greenfield's motion under Md. Rule 1–341 presented a colorable claim. As we have just discussed, a party may move under Rule 1–341 even though its fees, costs, and expenses were paid by its insurance carrier. In addition, although some of the malicious prosecution counts against Mr. Greenfield survived the motion for summary judgment, at the close of appellant's case, the court granted Mr. Greenfield's motion for judgment. Moreover, the circuit court concluded that Mr. Greenfield had an "arguable" basis for filing the charges against appellant, out of which grew appellant's malicious prosecution counts against Mr. Greenfield. As a result, the court did not err in concluding that there was no showing that Mr. Greenfield had proceeded in bath faith or without substantial justification.

**JUDGMENTS AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**