*Heather Stanley Christian, M.D. v. Maternal-Fetal Medicine Associates of Maryland, LLC, et al.*, No. 51, September Term, 2017. Opinion by Greene, J.

**CIVIL PROCEDURE — MARYLAND RULE 1-341 ATTORNEY'S FEES — NO SUBSTANTIAL JUSTIFICATION — NO EVIDENCE**

The Court of Appeals held that a trial court properly found no substantial justification for claims brought by a party when no evidence supported the causes of action alleged. A claim or litigation position lacks substantial justification if a party has no "reasonable basis for believing that the claims would generate an issue of fact for the fact finder," *see Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 268, 596 A.2d 1049, 1056 (1991); or the claim or litigation position "is not fairly debatable, not colorable, or not within the realm of legitimate advocacy," *see URS Corp. v. Fort Myer Construction Corp.*, 452 Md. 48, 72, 156 A.3d 753, 768 (2017). In the present case, the hearing judge found that Petitioner's fraudulent inducement, negligent misrepresentation, and wrongful termination claims failed the objective test set forth in *Inlet Assocs.* and therefore fell outside the realm of legitimate advocacy. After our review of the record, we find that the hearing judge did not commit clear error in making those determinations.

**CIVIL PROCEDURE — MARYLAND RULE 1-341 ATTORNEY'S FEES — MULTIPLE COUNT CLAIMS**

The Court of Appeals held that a court must make specific findings of fact, on the record, regarding the reasonableness of the fees requested by an aggrieved party pursuant to Maryland Rule 1-341. In particular, when a court is faced with multiple counts where some counts satisfy the standard of substantial justification and others do not, the court must determine that the particular attorney's fees imposed are reasonable in light of what the party incurred while defending unjustified claims. The Court of Appeals affirmed the judgment of the Court of Special Appeals and remanded the case to the trial court to make specific findings of fact regarding the amount of attorney's fees awarded for each of the unjustified claims.

**CIVIL PROCEDURE — MARYLAND RULE 1-341 ATTORNEY'S FEES —BUT-FOR TEST**

The Court of Appeals held that *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011), was persuasive authority to the extent that the "but-for" test is consistent with Maryland's jurisprudence with regard to Rule 1-341. *See Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 106, 727 A.2d 431, 436 (1999); *Beery v. Md. Med. Laboratory, Inc.*, 89 Md. App. 81, 102, 597 A.2d 516, 527 (1991). When granting an award of attorney's fees pursuant

to Rule 1-341, a judge may award fees for "the expenses actually incurred as a result" of a litigation position that lacked substantial justification or was brought in bad faith.

Circuit Court for Montgomery County
Case No. 281804
Argued: February 2, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 51

September Term, 2017

_____

HEATHER STANLEY CHRISTIAN

v.

MATERNAL-FETAL MEDICINE
ASSOCIATES OF MARYLAND, LLC, *et al.*

_____

Barbera, CJ.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: April 23, 2018

The questions before us in this case involve the application of Maryland Rule 1-341(a), the rule granting a court authority to award attorney's fees to an adverse party who was subjected to proceedings that were brought in bad faith or lacked substantial justification. We are called upon to determine what findings a court must make in order to require attorney's fees to be paid to an adverse party. Also we are tasked with determining the appropriate means for calculating attorney's fees, pursuant to Maryland Rule 1-341(a), when a court determines that a party's complaint includes claims that have substantial justification and claims that lack substantial justification. Petitioner, Heather Stanley-Christian, M.D. ("Petitioner" or "Dr. Christian") sued Respondents, Maternal-Fetal Medicine Associates of Maryland, LLC ("Maternal-Fetal"), and its principal, Sheri L. Hamersley, M.D. ("Dr. Hamersley") (collectively "Respondents"), after a disagreement that ultimately resulted in Petitioner ending her employment with Respondents. Dr. Christian brought multiple causes of action against Respondents, and Respondents prevailed in having the trial judge dispose of Petitioner's claims after the close of all the evidence.

Respondents then requested an award of attorney's fees under Maryland Rule 1-341. During the hearing for attorney's fees, the hearing judge found no substantial justification, pursuant to Rule 1-341(a), for each of the claims brought by Petitioner against Respondents. The hearing judge awarded $300,000 in attorney's fees to Respondents.

Petitioner appealed to the Court of Special Appeals, and that court vacated the judgment entered in the Circuit Court. *Maternal-Fetal Medicine Assocs. v. Christian*, No. 0967, 2009 (Md. Ct. Spec. App., July 24, 2013). The Court of Special Appeals affirmed

the hearing judge's findings of no substantial justification for the fraudulent inducement, negligent misrepresentation, and wrongful termination claims. *Id.* The Court of Special Appeals, however, reversed the hearing judge's findings of no substantial justification for the breach of contract and tortious interference with contract claims. *Id.*

We granted *certiorari* and affirm the judgment of the Court of Special Appeals. We hold that the hearing judge did not commit clear error in finding no substantial justification for the claims brought by Petitioner, namely, fraudulent inducement, negligent misrepresentation, and wrongful termination. We determine, however, that the hearing judge abused his discretion in assessing $300,000 in attorney's fees against Petitioner without articulating how he calculated the fees. Therefore, we affirm the judgment of the Court of Special Appeals vacating the award of attorney's fees and we remand the case to the Circuit Court for further fact finding.

## I.

This case has meandered through the judicial system for over a decade, and, unfortunately for the parties, its odyssey does not end with us. Dr. Christian entered into an employment agreement with Maternal-Fetal on November 14, 2005.[1] After a deterioration in relations between Drs. Christian and Hamersley, Dr. Christian left her employment with Maternal-Fetal on July 17, 2006. In March 2007, Petitioner began employment at Greater Washington Maternal-Fetal Medicine and Genetics ("Greater

---

[1] Included in the employment agreement was a non-compete clause that stated that Dr. Christian could not practice medicine in Montgomery County, the "North West section" of Washington D.C., and/or within 20 miles of any Maternal-Fetal office for a two-year period following termination of her employment for any reason.

Washington"), located in the Washington area. Soon after, Dr. Hamersley informed Greater Washington of a non-compete agreement between Dr. Christian and Maternal-Fetal. Greater Washington terminated Petitioner's employment shortly thereafter. Petitioner, in turn, filed a complaint in the Circuit Court for Montgomery County on April 19, 2007, alleging fraudulent inducement, breach of contract, tortious interference with contract, wrongful termination, and sought declaratory judgment, damages, attorney's fees, injunctive relief, and equitable relief.

After dismissal of the original complaint without prejudice, Petitioner filed an amended complaint on August 27, 2007. The amended complaint included all five of the original claims and added a claim for negligent misrepresentation. Respondents filed a counterclaim for breach of contract, asserting that Petitioner had breached the terms of the non-compete clause. Respondents filed and the trial judge granted a motion for summary judgment in favor of Respondents on all of Petitioner's claims, except the wrongful termination claim. After the close of plaintiff's case in chief, Respondents moved for judgment as a matter of law, which the trial court denied. The trial judge, however, granted Respondents' renewed motion for judgment at the close of all the evidence. When granting judgment on the wrongful termination claim, the trial judge explained:

> [Petitioner] has demonstrated that it wasn't intolerable to the point that she was required to leave. She only made that decision to leave when [Respondents] wouldn't accede to her financial request to up the ante in what she was getting paid and to shorten the time and increase the amount of business that she could buy from the [Respondents].

Additionally, the trial judge found that "[Petitioner] made allegations and assertions of changed billing records for which there's no proof that Dr. Hamersley changed them.

3

[Also] [t]here was not evidence that [Dr. Christian] was threatened ever of being fired."
The jury returned a verdict in favor of Respondents on the breach of contract counterclaim and awarded damages in the amount of $22,902.

After the jury returned its verdict on Respondents' counterclaim, Respondents filed a motion for attorney's fees and expenses pursuant to Maryland Rule 1-341. On December 29, 2009, the hearing judge indicated he would assess attorney's fees in an amount to be determined upon submission of the legal bills to the court. The hearing judge awarded $300,000 in attorney's fees and costs on July 25, 2011. Both parties noted timely appeals.

*The First Appeal*

On the first appeal, the Court of Special Appeals addressed four questions. *Maternal-Fetal Medicine Assocs. v. Christian*, No. 0967, 2009 (Md. Ct. Spec. App., July 24, 2013). The only one relevant to our inquiry is whether the trial court erred in awarding $300,000 in attorney's fees to Respondents.[2] *Id.* In its unreported opinion, the Court of

---

[2] The four questions the Court of Special Appeals answered were:
1. Did the trial court abuse its discretion by instructing the jury that Christian would not be liable for breaching the non-competition provision in the parties' employment agreement if Maternal-Fetal had materially breached the contract in a way sufficient to merit rescinding the contract as a whole or, in the alternative, if Christian's breach was not material?
2. Did the trial court err in denying Maternal-Fetal's motion for judgment notwithstanding the verdict on its claim for liquidated damages for Christian's breach of the non-competition provision?
3. Did the trial court err in awarding $300,000 in attorney's fees to Maternal-Fetal?
4. Did the trial court err by refusing to submit any of Christian's contract and tort claims against Maternal-Fetal and Hamersley to the jury?

*Maternal-Fetal Medicine Assocs. v. Christian*, No. 0967, 2009 (Md. Ct. Spec. App., July 24, 2013).

4

Special Appeals grappled with the basis of the trial court's award of fees, and remanded for clarification. *Id.* The Court of Special Appeals identified that an award of attorney's fees based on the contractual provision for fees would have been improper, signaling to the trial court that an articulation of a basis beyond the contract itself was necessary. *Id.*

On remand, the Circuit Court requested supplemental briefing and held an additional hearing specific to the issue of attorney's fees. On February 3, 2015, the hearing judge entered a Memorandum Opinion & Order in which he explained, in part, the basis for his award of attorney's fees. The hearing judge cited *Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 596 A.2d 1049 (1991), and then determined whether there was a lack of substantial justification for each party's litigation position. In his discussion, the hearing judge found that each claim brought by Petitioner lacked substantial justification. The judge explained:

> 1. Medical Billing and Prescription of Lovenox:
>
> The basis for most of Dr. Christian's claims was [Respondents'] medical billing and prescription of the drug Lovenox. Dr. Christian's allegations of misconduct regarding these issues lack merit.
>
> Dr. Christian alleged [Respondents] overbilled patients and Dr. Hamersley improperly signed billing forms when Dr. Christian was the physician who provided the service. Dr. Hamersley denied this allegation and presented exhibits at trial that showed billing forms alleged to be signed by Dr. Hamersley were actually signed by Dr. Christian. [Respondents] also presented evidence showing Dr. Hamersley was not even in town when the bills at issue were signed. [Respondents'] medical billing expert, Robin Roach, testified at trial that it is appropriate for a supervising physician to sign billing forms on behalf of a practice, and the supervising physician obtained no benefit from signing the forms. Dr. Christian did not retain a medical billing expert for trial or even cross-examine Robin Roach. While Dr. Christian claims that others (*i.e.*, Wayne Kramer and Megan Sterner) have witnessed improper billing, none of these individuals were called as

5

witnesses at trial. Dr. Christian failed to present any evidence to the jury that [Respondents'] billing practices were illegal or unethical.

After trial, Dr. Christian has argued an advisory letter to Dr. Hamersley from the Board of Physicians indicates fault. These letters are issued to inform, educate or admonish a health care provider. Dr. Christian has not read the letter nor does she have any information about its contents; however, she admits that the letter resulted from [] allegations she made against Dr. Hamersley. The Court will not speculate as to the contents of that letter nor will it require Dr. Hamersley to produce it. This case has been fully litigated and Dr. Christian had plenty of opportunity to present evidence to support her claims, but failed to do so.

Dr. Christian also claimed Dr. Hamersley had a financial arrangement with the manufacturers of the blood thinner, Lovenox, and Dr. Hamersley over-prescribed Lovenox because of the financial relationship. As a result of this allegation, [Respondents] were required to hire Adam Duhl, a medical expert on the prescription of Lovenox during pregnancy, to justify Dr. Hamersley's prescription of Lovenox to patients. No evidence was brought forth by Dr. Christian to support this claim, so this claim is without justification.

2. Fraud in the Inducement:

"[F]raudulent inducement means that a party has been led to enter into an agreement to his or her disadvantage as a result of deceit." Sass v. Andrew, 152 Md. App. 406, 422 (2003). This must include a willful non-disclosure or false representation of a material fact. Id. Dr. Christian alleged Dr. Hamersley made material omissions about patient care, billing practices, and the treatment of employee doctor's medical judgment and patient relations.

At [the] summary judgment [hearing], [the Circuit] Court [judge] found that Dr. Christian failed to establish any material misrepresentation made by [Respondents] and failed to show that [Respondents] had any intent to defraud Dr. Christian. In Dr. Christian's deposition she said that she consulted with her mentors about the opportunity and decided to take the position. Dr. Christian did not mention any representations by [Respondents] that caused her to enter [into] the employment contract. Because Dr. Christian failed to bring forth a fraudulent misrepresentation, this claim was also without substantial justification.

3. Negligent Misrepresentation:

Similar to the issue of Fraud in the Inducement, Dr. Christian failed to plead

6

or prove any facts to support a claim of Negligent Misrepresentation. There is no evidence that Dr. Hamersley intended Dr. Christian to act on any omission or negligent misrepresentation.

\* \* \*[3]

6. Constructive Discharge/Wrongful Termination:

The standard for constructive discharge is whether the employer has deliberately caused or allowed the employee's working conditions to become so intolerable that a reasonable person in the employee's place would have felt compelled to resign. Beye v. Bureau of Nat'l Affairs, 59 Md. App. 642, 653 (1984). Dr. Christian alleged ethical issues with [Respondents'] billing practices and allegations that Dr. Hamersley yelled at Dr. Christian and denied her access to the records rooms as the underlying facts for this claim. Dr. Christian complained her medical license would be jeopardized if she did not leave MFMA because [of Respondents'] billing practices and patient treatment.

These claims are inconsistent with Dr. Christian's actions. Prior to her departure from MFMA, Dr. Christian made handwritten changes to her employment contract. In order for Dr. Christian to stay, the conditions she added had to be met. They were mostly financial conditions, including the opportunity to purchase a 49% ownership interest in MFMA instead of the 20-30% membership interest agreed upon in the initial contract. Dr. Christian also added a more favorable calculation of her bonuses and MFMA to pay all [] her malpractice insurance coverage.

Dr. Christian claimed that the conditions at MFMA were so intolerable that she had to leave; however, she was willing to remain and purchase half of the practice if her financial conditions were met. Clearly the conditions were not so intolerable that a reasonable person in her position would leave because she was negotiating to stay if her demands were met. Consequently, the evidence presented by Dr. Christian was not even close to the standard required for a constructive discharge claim.

---

[3] Addressed in this gap were the breach of contract and tortious interference claims. The Court of Special Appeals determined that both claims had substantial justification, thereby reversing the hearing judge's determinations.

The hearing judge found that "[t]he total amount of attorney's fees accumulated by [Respondents] was $555,995.81." He awarded Respondents "$300,000 in attorney's fees as the amount [he] f[ound] to be reasonable and necessary to defend the claims brought by Dr. Christian without substantial justification."

*The Second Appeal*

On March 2, 2015, Petitioner noted a timely appeal to the Court of Special Appeals. In its second unreported opinion, the Court of Special Appeals vacated the judgment of the Circuit Court. *Christian v. Maternal-Fetal Medicine Assocs.*, No. 0013, 2015 (Md. Ct. Spec. App., July 3, 2017). The Court of Special Appeals affirmed the hearing judge's findings of no substantial justification for the fraudulent inducement, negligent misrepresentation, and wrongful termination claims. *Id.* However, the Court of Special Appeals reversed the hearing judge's findings of no substantial justification with respect to the breach of contract and tortious interference with contract claims.[4] *Id.* The Court of Special Appeals then remanded the case. *Id.*

This Court granted *certiorari* to answer the following questions, which we have revised for clarity:

1. Whether the hearing judge in the Circuit Court for Montgomery County committed clear error when he determined that Petitioner did not have substantial justification for the fraudulent inducement, negligent misrepresentation, and wrongful

---

[4] The Court of Special Appeals also held that the hearing judge's finding of no substantial justification for Petitioner's declaratory judgment action was clear error. Although Petitioner did bring a declaratory judgment action against Respondent, upon our review of the record, we see no such determination made by the hearing judge. On remand of the case to the Circuit Court, we direct that court to address this matter in its ruling.

8

termination claims under Maryland Rule 1-341 and whether he abused his discretion when he awarded $300,000 in attorney's fees?

2. Whether this Court should expressly adopt the "but-for" test set forth by the United States Supreme Court in *Fox v. Vice*, 563 U.S. 826 (2011) for determining awards of attorney's fees?

*Christian v. Maternal-Fetal Medicine Assocs. of Md.*, 456 Md. 78 (2017).[5]  We answer no to the first question, and hold that the hearing judge did not commit clear error in entering factual findings as explicated in the Memorandum Opinion & Order issued by the Circuit Court.  The hearing judge properly determined that Petitioner's claims of fraudulent inducement, negligent misrepresentation, and wrongful termination lacked substantial justification under Md. Rule 1-341.  Although the wrongful termination claim survived summary judgment as well as a motion for judgment raised at the end of the plaintiff's

---

[5] The questions, as presented, in the Petition for Certiorari were as follows:

1. Whether the Court of Special Appeals applied the correct legal standard in affirming, in part, the Circuit Court's prior determination that the petitioner did not have a good faith basis under Md. Rule 1-341 to bring a claim for Fraud in the Inducement, Negligent Misrepresentation and Wrongful Termination/Constructive Discharge where the Court of Special Appeals viewed the record in the light most favorable to Respondent, ignored evidence and inferences that supported Petitioner's good faith basis to bring those claims and did not instruct the Circuit Court to review the entirety of information supporting Petitioner's claims rather than solely the evidence admitted at trial[?]

2. Whether this Court should expressly adopt the legal standard set forth by the United States Supreme Court in *Fox v. Vice*, 563 U.S. 826 (2011) in determining the movant's burden of proof for establishing damages for a claimed violation of Md. Rule 1-341, namely that where a Complaint contains both frivolous and non-frivolous claims, the movant may only recover attorney's fees which would not have been incurred but for the frivolous claims[?]

case, the hearing judge disposed of the wrongful termination claim after Respondents' renewed their motion for judgment.

Notwithstanding our observation that the hearing judge was not clearly erroneous in finding no substantial justification for these claims, we determine that the hearing judge abused his discretion under Rule 1-341(a) when he awarded $300,000 in attorney's fees without explaining the basis for that award. Thus, we remand for further factual findings regarding the amount of attorney's fees to be paid, if any, by Petitioner, and for an explanation as to how the court calculates the specific amount.

## II.

Our task is to determine whether the trial court erred in its application of Rule 1-341. Petitioner references various pieces of evidence that the hearing judge considered and argues that the hearing judge did not afford appropriate weight to that evidence. Petitioner contends that the evidence, by itself or by inference, amounts to factual disputes with regard to substantial justification for the causes of action she brought against Respondents. Petitioner generally refers to alleged incorrect legal determinations made by the hearing judge, and specifically refers to the hearing judge's alleged reliance on the grant of summary judgment and then a renewed motion for judgment as the basis for finding no substantial justification in the claims she brought against Respondents.[6]   Petitioner

---

[6] Even if we agree that the hearing judge relied on the fact that he granted summary judgment and judgment as a matter of law to the claims brought by Petitioner, Petitioner refers to no authority suggesting that this was improper. Therefore, the hearing judge was not legally incorrect in prefacing his findings with the factual statement that none of the claims brought by Petitioner reached the jury.

10

contends that simply because the hearing judge dismissed two of her claims does not necessarily mean that those claims lacked substantial justification. Lastly, Petitioner urges that because she believed that unethical billing practices were occurring, regardless of their legality or ethicality, the evidence was sufficient to create substantial justification for her claims.

To the contrary, Respondents contend that the hearing judge was not clearly erroneous in finding no substantial justification for the claims brought by Petitioner. Additionally, Respondents posit that we do not need to reach the second question because there is no gap in Maryland law relating to how to calculate attorney's fees. We essentially agree and will discuss our reasons in detail later in the opinion.

Rule 1-341 dictates the remedial authority of the court in any civil action to require a party to pay an opposing party's attorney's fees for unjustified proceedings. Rule 1-341(a) provides:

> In any civil action, if the court finds that the conduct of any party in maintaining or defending any proceeding was in bad faith or without substantial justification, the court, on motion by an adverse party, may require the offending party of the attorney advising the conduct or both of them to pay to the adverse party the costs of the proceeding and the reasonable expenses, including reasonable attorneys' fees, incurred by the adverse party in opposing it.

Rule 1-341 constitutes a limited exception to the American Rule, which is that, generally, "litigants pay their own attorney's fees regardless of the lawsuit's outcome." *Johnson v. Baker*, 84 Md. App. 521, 527, 581 A.2d 48, 51 (1990), *cert. denied*, 322 Md. 131 (1991) (citing *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985)). As we have so stated, "[I]t is clear from the history of the Rule, and the case

11

law interpreting it, that Rule 1-341 was intended to function primarily as a deterrent" against abusive litigation. *Worsham v. Greenfield*, 435 Md. 349, 369, 78 A.3d 358, 371 (2013); *see also Zdravkovich v. Bell Atlantic-Tricon Leasing Corp.*, 323 Md. 200, 212, 592 A.2d 498, 504 (1991) ("[Rule 1-341's] purpose is to deter unnecessary and abusive litigation."). Despite its capacity as a deterrent, Rule 1-341 should not be construed as a punishment but merely as a mechanism to place "the wronged party in the same position as if the offending conduct had not occurred." *Major v. First Virginia Bank-Central Md.*, 97 Md. App. 520, 530, 631 A.2d 127, 132 (1993), *cert. denied*, 334 Md. 18 (1994); *see also Beery v. Md. Med. Laboratory, Inc.*, 89 Md. App. 81, 102, 597 A.2d 516, 526–27 (1991), *cert. denied*, 325 Md. 329 (1992) ("[T]he court must be guided by the principle that . . . despite our occasional use of the word 'sanction,' [Rule 1-341] is not punitive but is intended merely to compensate the aggrieved party for their reasonable costs and expenses, including reasonable attorney's fees[.]").

Because the rule serves as a deterrent and is intended to compensate as opposed to punish, an award of attorney's fees is considered "an 'extraordinary remedy,' which should be exercised only in rare and exceptional cases." *Barnes v. Rosenthal Toyota, Inc.*, 126 Md. App. 97, 105, 727 A.2d 431, 435 (1999) (quoting *Black v. Fox Hills N. Cmty. Assn. Inc.*, 90 Md. App. 75, 83, 599 A.2d 1228, 1232 (1992)); *see also Major*, 97 Md. App. at 530, 631 A.2d at 132 ("[A]warding attorney's fees under this rule is an extraordinary remedy, and it should be used sparingly."); *Art Form Interiors, Inc. v. Columbia Homes, Inc.*, 92 Md. App. 587, 595, 609 A.2d 370, 374 (1992) ("[Rule 1-341] is reserved for the rare and exceptional case."); *Legal Aid Bureau, Inc. v. Farmer*, 74 Md. App. 707, 722, 539

A.2d 1173, 1180 (1988) ("Rule 1-341 represents a limited exception to the general rule . . . . It is not intended to punish legitimate advocacy."). Judges must cautiously award attorney's fees to avoid firing "judicially guided missiles" at innovative legal causes, thereby chilling access to the courts. *Legal Aid Bureau, Inc. v. Bishop's Garth Assocs. Ltd. P'ship*, 75 Md. App. 214, 224, 540 A.2d 1175, 1180, *cert. denied*, 313 Md. 611 (1988); *see also Dent v. Simmons*, 61 Md. App. 122, 128, 485 A.2d 270, 272–73 (1985) ("A litigant ought not be penalized for innovation or exploration beyond existing legal horizons unless such exploration is frivolous."); *Bohle v. Thompson*, 78 Md. App. 614, 639, 554 A.2d 818, 830, *cert. denied*, 316 Md. 364 (1989) ("A person has a right to 'lose' within the judicial system without incurring the added imposition of paying the other side's attorney's fees"). Therefore, judges have the responsibility of properly applying the rule to calibrate its application such that abusive practices are deterred and aggrieved parties are compensated without stunting the development of the law. *See Needle v. White*, 81 Md. App. 463, 470–71, 568 A.2d 856, 860. As the Court of Special Appeals explained in *Needle*:

> The objective of the Rule is to fine-tune the judicial process by eliminating the abuses arising from . . . litigation that is clearly without merit. The inherent danger . . . is that [overzealous] pursuit of the objective may result in . . . stifling the enthusiasm or chilling the creativity that is the very lifeblood of the law.
>
> \* \* \*
>
> Free access to the courts is an important and valuable aspect of an effective system of jurisprudence, and a party possessing a colorable claim must be allowed to assert it without fear of suffering a penalty more severe than that typically imposed on defeated parties.

*Id.* at 470–72, 568 A.2d 856, 860. (internal quotations omitted) (internal citations omitted).

13

Rule 1-341 requires a court to make two separate findings, each with different, but related, standards of review. *Inlet Assocs. v. Harrison Inn Inlet, Inc.*, 324 Md. 254, 267–68, 596 A.2d 1049, 1056 (1991). The judge must first find that the conduct of a party during a proceeding, in defending or maintaining the action, was without substantial justification or was done in bad faith. *Id.* An appellate court reviews this finding for clear error or an erroneous application of the law. *Id.* Upon review, the evidence is viewed "in a light most favorable to the prevailing party." *Liberty Mut. Ins. Co. v. Md. Automobile Ins. Fund*, 154 Md. App. 604, 609, 841 A.2d 46, 49 (2004). The burden of demonstrating that a court committed clear error falls upon the appealing party. *Sydnor v. Hathaway*, 228 Md. App. 691, 726, 142 A.3d 658, 678, *cert. denied*, 450 Md. 442 (2016). So long as "there is any competent material evidence to support the factual findings of the [] court, those findings cannot be held to be clearly erroneous." *Major*, 97 Md. App. at 531, 631 A.2d at 132.

Next, the judge must separately find that the acts committed in bad faith or without substantial justification warrant the assessment of attorney's fees. *Inlet Assocs.*, 324 Md. at 267–68, 596 A.2d at 1056. An appellate court reviews this finding under an abuse of discretion standard. *Id.* So long as the hearing judge exercises his or her discretion reasonably, an appellate court will not reverse the judgment under review. *See University of Maryland Medical System Corp. v. Kerrigan*, 456 Md. 393, 401, 174 A.3d 351, 356 (2017) ("[A]ppellate courts should be reticent to substitute their own judgment for that of the trial court unless they can identify clear abuse[.]") (internal quotation marks omitted).

14

In order to find that a party owes attorney's fees pursuant to Rule 1-341, a court must first find that the action was brought in either bad faith or without substantial justification. *URS Corp. v. Fort Myer Construction Corp.*, 452 Md. 48, 72, 156 A.3d 753, 767 (2017). Although a finding of bad faith may overlap with a finding of no substantial justification, the two prongs operate disjunctively and as a necessary step prior to the imposition of attorney's fees. *See, e.g., Blanton v. Equitable Bank, Nat'l Ass'n*, 61 Md. App. 158, 163, 485 A.2d 694, 697 (1985). In the context of Rule 1-341, we have defined bad faith as "vexatiously, for the purpose of harassment or unreasonable delay, or for other improper reasons." *Inlet Assocs.*, 324 Md. at 268, 596 A.2d at 1056.

Because there are no findings by the hearing judge that Petitioner acted in bad faith, we have nothing under the bad faith prong of Rule 1-341 to review. *Century I Condominium Ass'n, Inc. v. Plaza Condominium Joint Venture*, 64 Md. App. 107, 116, 494 A.2d 713, 718 (1985) ("[B]ecause there is no definite indication of the judge's views of the facts, there is no opportunity for the application of the clearly erroneous rule.") (internal citation omitted).[7]

For a claim or litigation position to lack substantial justification, a party must have no "reasonable basis for believing that the claims would generate an issue of fact for the

---

[7] "To impose sanctions under Rule 1-341(a), a court must make *an explicit finding* that a party conducted litigation either in bad faith or without substantial justification." *URS Corp. v. Fort Myer Construction Corp.*, 452 Md. 48, 72, 156 A.3d 753, 767 (2017) (emphasis added). It may have been entirely reasonable for the trial court in this case to find that Petitioner acted in bad faith in bringing a wrongful discharge action only after a breakdown of contractual negotiations. Because the trial court failed to make an explicit finding of bad faith on the record as is required by the law established by this Court in *URS Corp.*, we would merely be speculating as to the basis of the trial court's findings.

15

fact finder," *see Inlet Assocs.*, 324 Md. 254, 268, 596 A.2d at 1056, and the claim or litigation position must not be "fairly debatable, [must] not [be] colorable, or [must] not [be] within the realm of legitimate advocacy." *See URS Corp.*, 452 Md. at 72–73, 156 A.3d at 768 (footnotes omitted). It is legal error for a court "to determine a lack of substantial justification from the vantage point of judicial hindsight because hindsight, judicial or otherwise, is always 20/20, irrespective of any astigmatism foresight may suffer." *Bishop's Garth Assocs. Ltd. P'ship*, 75 Md. App. at 222, 540 A.2d at 1179 (citing *Century I Condominium Ass'n, Inc. v. Plaza Condominium Joint Venture*, 64 Md. App. 107, 118, 494 A.2d 713, 719 (1985)); *see also Needle*, 81 Md. App. at 476, 568 A.2d at 862–63 ("Lack of substantial justification, we said, may not be determined from the vantage point of judicial hindsight."); *Kelley v. Dowell*, 81 Md. App. 338, 342–43, 567 A.2d 521, 523 (1990) ("[T]he trial judge, in awarding attorney's fees, engaged in precisely the type of judicial hindsight . . . that we found to be erroneous in *Legal Aid v. Bishop's Garth*.").

While avoiding the trap of utilizing hindsight, a court must conduct "an examination of the merits" under the totality of the circumstances presented to the court when assessing whether a claim has substantial justification. *See Kelley*, 81 Md. App. at 344, 567 A.2d at 524; *Bohle*, 78 Md. at 639, 554 A.2d at 830.

Where a party has no evidence to support its allegations, the proceedings lack substantial justification from the outset. *See Worsham v. Greenfield*, 187 Md. App. 323, 342–43, 978 A.2d 839, 850 (2009) (explaining that "there was *not one scintilla* of evidence" to support the claims alleged and that the claims were not substantially justified

16

because "[they] lack[ed] any basis in law or fact" (citing *Johnson v. Baker*, 84 Md. App. 521, 529, 581 A.2d 48, 52 (1990)) (emphasis added); *DeLeon Enterprises, Inc. v. Zaino*, 92 Md. App. 399, 418, 608 A.2d 828, 838 (1992) (explaining that where there was no evidence of an essential element of misrepresentation, the parties, nonetheless, lacked substantial justification to continue their suit after discovery).

Additionally, frivolous claims, or claims that "indisputably ha[ve] no merit" lack substantial justification. *Blanton*, 61 Md. App. at 165–66, 485 A.2d at 698. In explicating the distinction between frivolous and non-frivolous actions, the Court of Special Appeals stated:

> The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

*Bishop's Garth Assocs. Ltd. P'ship*, 75 Md. App. at 221–22, 540 A.2d at 1179; *see also Inlet Assocs.*, 324 Md. at 268, 596 A.2d at 1056 (explaining that an action is frivolous if "the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for extension, modification or reversal of existing law"). The much frowned-upon "kitchen sink" approach to pleading may well happen to fall under the rubric of frivolous claims worthy of the imposition of attorney's fees. *Beery*, 89 Md. App. at 103, 597 A.2d at 527 ("[R]equiring opposing

17

counsel to defend a 'kitchen sink' type of pleading containing multiple claims strung together without any critical thought given to the applicability or merits of each claim [may] very well result in being assessed attorney's fees[.]"). Likewise, evidence supporting a litigation position must be genuine in order to provide substantial justification to the challenge. *See Old Frederick Rd., LLC v. Wiseman*, 213 Md. App. 513, 530, 74 A.3d 820, 830 (2013) ("Serio's creation of a fake contract suggests that his challenge to Wiseman's contract was not a genuine challenge.").

Although evidence must be genuine in order to support a finding of substantial justification for a claim, questions of credibility are factual issues to be resolved by the finder of fact, and the mere finding that testimony or evidence lacks credibility does not, in itself, create a basis for attorney's fees. *See Bishop's Garth Assocs. Ltd. P'ship*, 75 Md. App. at 223, 540 A.2d at 1179 ("[I]t is the province of the jury to assess credibility when confronted with conflicting testimony. The fact that a jury may believe one witness instead of others does not mean that the party whose witnesses were not believed defended in 'bad faith' or 'without substantial justification.'"). A claim that advances a reasonable position in light of legal ambiguity has substantial justification. *See Toliver v. Waicker*, 210 Md. App. 52, 72, 62 A.3d 200, 212, *cert. denied*, 432 Md. 213 (2013) (holding that there was no error for a trial court to deny a request for sanctions when there remained an open question as to the status of the law in that case); *see also Newman v. Reilly*, 314 Md. 364, 380–82, 550 A.2d 959, 967–68 (1988) (explaining that Mr. Reilly had substantial justification for his cause of action based upon his interpretation of an ambiguous statute).

18

When considering whether a claim lacks substantial justification, the lack thereof cannot be found exclusively on the basis that "a court rejects the proposition advanced by counsel and finds it to be without merit." *State v. Braverman*, 228 Md. App. 239, 260, 137 A.3d 377, 389 (2016). Generally, survival of summary judgment indicates that a claim likely has substantial justification. *Braverman*, 228 Md. App. at 261, 137 A.3d at 390–91 ("Yet, if those issues were sufficiently novel, difficult, and debatable to justify dismissing portions of the complaint and denying cross-motions for summary judgment, they must also have been sufficient to justify the State in defending the case."). Survival of motions for judgment may generate a presumption of substantial justification for claims. *Needle*, 81 Md. App. at 479, 568 A.2d at 864 ("If the evidence was sufficiently debatable to deny the [three] motions [for judgment] throughout the trial, it was sufficient to justify Gerst in bringing and continuing the case."); *see also Havilah Real Property Servs., LLC v. Early*, 216 Md. App. 613, 630–31, 88 A.3d 875, 885–86 (2014) (affirming the holding in *Needle* that survival of motions for summary judgment and judgment at trial creates a presumption of a claim having substantial justification). And, merely because a cause of action is dismissed does not mean a party brought the claim without substantial justification. *See Black v. Fox Hills N. Cmty. Ass'n, Inc.*, 90 Md. App. 75, 84, 599 A.2d 1228, 1232 (1992) ("Rule 1-341 applies only when a suit is patently frivolous and devoid of any colorable claim.").

In the present case, we review three of Petitioner's claims to determine if the hearing judge appropriately concluded that each of the claims lacked substantial justification. First, we address the claims of fraudulent inducement and negligent misrepresentation

together because neither claim survived Respondents' motion for summary judgment. With regard to the claim for fraudulent inducement, the hearing judge explained: "At summary judgment, this Court found that Dr. Christian failed to establish any material misrepresentation made by [Respondents] and failed to show that [Respondents] had any intent to defraud Dr. Christian." The hearing judge then explained the basis of this finding as follows:

> In Dr. Christian's deposition she said that she consulted with her mentors about the opportunity and decided to take the position. Dr. Christian did not mention any representations by [Respondents] that caused her to enter [into] the employment contract. Because Dr. Christian failed to bring forth a fraudulent misrepresentation, this claim was also without substantial justification.

Then, in finding that "Dr. Christian failed to plead or prove any facts to support a claim of [n]egligent [m]isrepresentation," the hearing judge explained: "There is no evidence that Dr. Hamersley intended Dr. Christian to act on any omission or negligent misrepresentation," and he compared this to being "[s]imilar to the issue of [f]raud in the [i]nducement."

The hearing judge was not clearly erroneous in concluding that the fraudulent inducement and negligent misrepresentation claims brought by Petitioner had no substantial justification. Petitioner contends that the hearing judge should have been persuaded that there was substantial justification for the two claims.[8] Given the deference

---

[8] Petitioner urges that we consider, primarily, *United States v. Campbell*, as well as other cases, as legal support for her belief that Respondents engaged in fraudulent activity. 845 F.2d 1374 (6th Cir. 1988). *Campbell* involved a doctor who billed for unperformed and unnecessary treatments and who was then convicted of 34 counts of mail fraud and 18

(continued . . .)

owed to a court when reviewing for clear error, we disagree with Petitioner's contention. This Court agrees with the findings of the hearing judge that there was not even "a scintilla of evidence" showing either that Respondents' intent was to defraud Petitioner or that Respondents misrepresented, explicitly or by omission, material information in order to induce Petitioner to enter into an employment agreement.[9] *See Worsham*, 187 Md. App. at 342–43, 978 A.2d at 850; *see also See Starke v. Starke*, 134 Md. App. 663, 680–81, 761 A.2d 355, 364 (2000) ("It is virtually, albeit perhaps not totally, impossible to find reversible error in [the decisional phenomenon of not being persuaded]."). No inference based on the evidence presented to the hearing judge or arguments made in this case convinces us that Petitioner "had a reasonable basis for believing that the [fraudulent inducement and negligent misrepresentation] claims would generate an issue of fact," *see Inlet Assocs.*, 324 Md. at 268, 596 A.2d at 1056, or that Petitioner's claims were "fairly debatable, [] colorable," or otherwise "within the realm of legitimate advocacy," *see URS*

---

(. . . continued)

counts of false claims against the federal government. *Id.* at 1375. The holding involved rulings on unavailable witnesses, authentication, and the use of videotaped depositions, as well as the admission of testimony from former patients and some physical evidence such as checks. *See, e.g., id.* at 1377–83. Then, the opinion addresses the procedures performed by the doctor. The court concluded that the procedures could not be considered medically effective based on the evidence. *Id.* at 1383. Thus, the jury could have inferred that the doctor performed such services in order to bill for them without the patients incurring harm. *Id.* It is unclear how this case supports any of Petitioner's arguments given the factual dissimilarities with the present case.

[9] Petitioner fails to explain how any evidence arising after entering into the employment agreement would substantially justify her fraudulent inducement and negligent misrepresentation claims. And, none of these facts rebuts the findings of the hearing judge made with regard to wrongful termination.

21

*Corp.*, 452 Md. at 72–73, 156 A.3d at 768. Because the fraudulent inducement and negligent misrepresentation claims fail the objective standard set forth in *Inlet Assocs.* and fall outside the zone of what is considered legitimate advocacy, the hearing judge did not commit clear error in holding that the claims lacked substantial justification.

Turning to the wrongful termination claim alleged by Petitioner, this claim differs from the previously discussed claims because it survived summary judgment and a motion for judgment. The claim was eventually disposed of after Respondents' renewed motion for judgment. The hearing judge summarized the allegations asserted by Petitioner as a claim for constructive discharge based upon these assertions: unethical billing practices, Respondents' mistreatment of Petitioner, and Respondents' denial of access to rooms containing patient records. The hearing judge then found that Petitioner attempted to negotiate her employment agreement to increase her "opportunity to purchase" a greater interest in the practice as well as "a more favorable calculation of her bonuses" in addition to receiving higher "malpractice insurance coverage" as a financial benefit to Dr. Christian prior to her departure from the practice. The hearing judge concluded that "the evidence presented by Dr. Christian was not even close" because Petitioner brought the claim for wrongful termination only when compensation negotiations, which she initiated, broke down.

Based upon our review of the record, we hold that the hearing judge did not commit clear error in concluding that Petitioner had no substantial justification for her wrongful termination claim. The hearing judge found that "[t]hese claims [surrounding wrongful discharge] are inconsistent with Dr. Christian's actions," which is tantamount in every way

22

to stating that the claim was "not within the realm of legitimate advocacy." *See URS Corp.*, 452 Md. At 72–73, 156 A.3d at 768. We pointed out, in *Inlet Assocs.*, that judges are presumed to know the law and properly apply it. 324 Md. at 270, 596 A.2d at 1057. Petitioner, in the present case, has not rebutted this presumption based upon the facts presented.

Petitioner sought greater involvement in Dr. Hamersley's medical practice and claimed that the practice and its principal were involved in unethical billing procedures. The contradiction inherent in Petitioner's actions undercuts the notion that she "had a reasonable basis for believing [her wrongful termination claim] would generate an issue of fact for the fact finder." *See Inlet Assocs.*, 324 Md. At 268, 596 A.2d at 1056. That Petitioner wanted a greater financial stake in the practice than what had been negotiated in her employment agreement is entirely inconsistent with a claim of constructive discharge. Nevertheless, Petitioner contends that because she *believed* the billing practices to be unethical, she had generated a question of fact that would overcome any alleged lack of substantial justification. Petitioner fails to cite any legal support for this proposition. Moreover, the hearing judge specifically addressed this argument in his findings. He pointed out that even if she *believed* Respondents were engaging in unethical practices, Petitioner still attempted to *negotiate* an employment agreement with greater financial gains with knowledge of those practices. In our view, Petitioner's argument begs the question: if the billing practices were so bad, why would she bargain to increase her financial benefit knowing that changes in the billing practices were not part of the agreement? Viewing the evidence in a light most favorable to the prevailing party,

23

Respondents, we see no reason to reverse the trial court's finding of no substantial justification. Because the wrongful termination claim fails the objective standard set forth in *Inlet Assocs.* and falls outside the zone of what is considered legitimate advocacy, the hearing judge did not commit clear error in holding that the claim lacked substantial justification.

A court need not decide at the outset of a trial whether a claim has substantial justification in order to avoid falling into the pitfall of utilizing hindsight and committing legal error. Here, the hearing judge was unable to make a final determination about the merit of the wrongful termination claim brought by Petitioner until the close of all the evidence. The hearing judge did state, on the record in response to the motion for summary judgment on the wrongful termination claim, that he believed there was "a factual dispute that need[ed] to be litigated." Although the fact that a claim has survived summary judgment or a motion for judgment and therefore generates a presumption that there is substantial justification for the position, the presumption can be rebutted and was rebutted here. Specifically, one aspect of the basis for granting the renewed motion for judgment arose after Respondents called a billing expert to testify that Respondents' billing procedures complied with customary billing practices. That testimony was not challenged by Petitioner, who called no opposing expert or even cross-examined Respondents' witness on the subject. The fact that it was not clear to the trial judge until the close of all the evidence that there was no "reasonable basis" for the litigation position taken by Petitioner regarding her wrongful termination claim is not dispositive in this case. It is significant that the hearing judge carefully weighed all of the evidence presented prior to ruling on the

24

renewed motion for judgment. *See* Maryland Rule 2-519(a)–(b) ("[T]he court may proceed, as the trier of fact, to determine the facts and to render judgment against the plaintiff or may decline to render judgment until the close of all the evidence. . . . [T]he court shall consider all evidence and inferences . . . ."). The hearing judge's ruling on the renewed motion for judgment rebuts the notion that Petitioner had substantial justification for her claim of wrongful termination.

### III.

In light of the severity of the imposition and the rarity with which a court ought to impose such fees under Rule 1-341, the second step in determining an award of attorney's fees under Rule 1-341 is a determination of how much, if any, in fees should be awarded. Ordering attorney's fees to be paid by an adverse party who brought a claim in bad faith or without substantial justification is within the discretion of the court, as is the discretion to *not* award attorney's fees. *DeLeon Enterprises, Inc.*, 92 Md. App. at 419, 608 A.2d at 838 ("Rule 1-341 provides only that a court *may* require the offending party to pay reasonable expenses and thus permits the court to exercise its discretion not to award fees despite the existence of the predicate for doing so.") (cleaned up).

A party must demonstrate, by a preponderance of the evidence, that it has the right to the amount of attorney's fees sought. *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 400 Md. 718, 761, 929 A.2d 932, 957 (2007). A court must make findings of fact regarding its award of attorney's fees, and those findings must be made on the record. *Barnes*, 126 Md. App. at 106, 727 A.2d at 435–36 ("[A] court may not impose [attorney's fees] under Rule 1-341 without rendering specific findings of fact on the record as to a

party's bad faith or lack of substantial justification . . . . Hence, a court must denote with particularity how its award corresponds with a party's misconduct[.]"). The findings of the amount of fees awarded must be clearly delineated lest the court abuse its discretion. *See Miller v. Miller*, 70 Md. App. 1, 12–13, 519 A.2d 1298, 1304 (1987) (concluding that "even though there may be a basis for an award of some counsel fees and costs pursuant to the rule, the award of all such fees and costs is, on this record, arbitrary and clearly wrong"). The basis must be ascertainable in order to survive appellate review. *See Talley v. Talley*, 317 Md. 428, 438, 564 A.2d 777, 782 (1989) (vacating an award for attorney's fees where the court did not explain the basis for awarding attorney's fees).

One such finding a court must make in order to award attorney's fees is that the fees requested by the aggrieved party were incurred by the party requesting the fees. *Braverman*, 28 Md. App. at 265, 137 A.2d at 392. The fees incurred, therefore, act as a ceiling on what is recoverable by a party under Rule 1-341. *See Seney v. Seney*, 97 Md. App. 544, 552, 631 A.2d 139, 143 (1993) ("When, however, a party does not incur any expense for attorney's fees, those fees cannot be reimbursed."); *Frison v. Mathis*, 188 Md. App. 97, 106, 981 A.2d 57, 62 (2009) ("These cases make clear that, pursuant to the plain language of Rule 1-341, the attorney's fees recoverable are limited to those that reimburse the party for actual expenses incurred.").

A court must also make a finding that the fees requested by the aggrieved party are reasonable. The party seeking an award of attorney's fees bears the burden of demonstrating the reasonableness of the attorney's fees sought. *Brown v. Brown*, 195 Md. App. 72, 123, 5 A.3d 1144, 1173 ("In Maryland, a party seeking reimbursement of fees

26

bears the burden to present evidence concerning their reasonableness.") (citing *Sczudlo v. Berry*, 129 Md. App. 529, 550, 743 A.2d 268, 279 (1990) (internal quotation marks omitted)). The court must make a finding that the fees incurred were reasonable. *Barnes*, 126 Md. App. at 106, 717 A.2d at 436. This determination of what fees incurred were reasonable must provide for "reimbursement of expenses, including reasonable counsel fees, *actually* incurred." *U.S. Health, Inc. v. State*, 87 Md. App. 116, 130–31, 589 A.2d 485, 492 (1991) (emphasis added); *see also Major*, 97 Md. App. at 537, 631 A.2d at 135 ("There, attorney's fees . . . were well documented and considered reasonable."). In making findings regarding the amount of attorney's fees to impose on a party, the court may consider a number of factors, such as

> evidence submitted by counsel showing time spent defending an unjustified or bad faith claim or defense, the judge's knowledge of the case and the legal expertise required, the attorney's experience and reputation, customary fees, and affidavits submitted by counsel.

*Major*, 97 Md. App. at 540, 631 A.2d at 137. So long as the imposed fees are not arbitrary, the court will not have abused its discretion. *Id.* at 541–42, 631 A.2d at 137–38. The findings must be on the record in order for the court not to abuse its discretion in imposing attorney's fees. *Sczudlo v. Berry*, 129 Md. App. 529, 552, 743 A.2d 268, 280 n.3 (1999) ("The [court], however, must affirmatively state, for the record . . . the reasonableness of attorney's fees.").

An award of attorney's fees must be apportioned based on the particular claims requiring compensation and must be limited to those claims in order to be reasonable. *See Barnes*, 126 Md. App. at 106, 727 A.2d at 436 ("Moreover, in cases involving multiple

causes of action . . . a court must make specific findings of fact as to which of the litigant's attorney's fees and expenses are attributable to the maintenance of the meritless claims."); *Beery*, 89 Md. App. at 102, 597 A.2d at 527 ("Where only part of a proceeding was maintained in bad faith or without substantial justification, however, the aggrieved party may have a great deal of difficulty in separating expenses incurred in opposing one part of his opponent's claim or defense from the remaining part[s.]"). In *Beery*, the Court of Special Appeals advised that the gold standard in situations involving multiple claims would be, "An attorney who intends to claim compensation under Rule 1-341 for defending a multiple-count claim in which at least one count has colorable merit may have to keep records that accurately reflect what time is expended on specific aspects of the case, in order to meet the burden of proof on that issue." *Id.* Yet, as this Court has previously held, "[b]ecause such a precise delineation may not always be practicable, however, we do not regard it as a *sine qua non* of the right to recover, for to conclude otherwise would, in many cases, deny *all* recovery where *some* recovery is clearly warranted." *Diamond Point Plaza Ltd. P'ship*, 400 Md. at 761, 929 A.2d at 957–58.

When a court has abused its discretion in imposing attorney's fees, the appropriate remedy is to vacate the award and remand for further proceedings to develop the factual basis for how the court chooses to exercise its discretion. *Talley*, 317 Md. at 438, 564 A.2d at 782; *Miller*, 70 Md. App. at 13, 519 A.2d at 1304 ("On remand, the court must again consider whether, and to what extent it should award fees and costs pursuant to the rule.").

This Court has mindfully and attentively scoured the record for any basis upon which the hearing judge awarded $300,000 in attorney's fees to Respondent. We find none.

28

The only finding of fact related to attorney's fees conducted by the hearing judge was that the actual amount of attorney's fees requested consisted of $555,905.81.[10] Absent findings in the record, an appellate court has no means to review a court's exercise of discretion to award attorney's fees. *See Fowler v. Printers II, Inc.*, 89 Md. App. 448, 487, 598 A.2d 794, 813 (1991) ("Without such a finding, it is impossible for an appellate court to review the circuit court's decision."). The Honorable Howard S. Chasanow provided the following sage wisdom regarding Rule 1-341 motions for attorney's fees: "[I]n too many cases, the pleadings that evidence the most bad faith and the least justification are motions requesting costs and attorney's fees." *Zdravkovich*, 323 Md. at 212, 592 A.2d at 504. In the present case, the hearing judge may very well have had a reasonable basis for imposing $300,000 in attorney's fees based upon his findings that Petitioner lacked substantial justification for her claims. However, the hearing judge's rationale as to how he arrived at $300,000 does not appear in the record. Accordingly, we affirm the judgment of the Court of Special Appeals to vacate the award of attorney's fees granted by the hearing judge. Additionally, we remand for findings that are specific to the calculation of attorney's fees as those fees relate to the litigation expenses incurred, consistent with our holding.

---

[10] For effective appellate review, appellate courts necessarily must receive records that reflect the basis for how the trial court calculated the amount of attorney's fees. *See Fowler v. Printers II, Inc.*, 89 Md. App. 448, 487, 598 A.2d 794, 813 (1991). Records rich in explanation are necessary not only because of the possible complexity of some claims having substantial justification and others not having substantial justification, and not only because a court may deviate from the findings made regarding the total amount incurred by the aggrieved party, but also because these factors compound the difficulty of an appellate court's review of how a court adduced the amount of fees imposed, such as is the case here.

The second question raised in the petition for certiorari is whether this Court should

adopt *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011). *Fox* presented

the issue of "whether and to what extent a court may award fees to a defendant under [42

U.S.C.] § 1988[11] when a plaintiff asserts both frivolous and non-frivolous claims." 563

U.S. at 832, 131 S. Ct. at 2212, 180 L. Ed. 2d at 53. The case involved a successful chief

of police candidate who sued his former electoral opponent as well as the town of Vinton,

Louisiana for both state and federal law violations. Fox, the elected chief of police, filed

suit against his former opponent, Vice, and the town of Vinton (collectively "Vice") for

defamation and violations of 42 U.S.C. § 1983, grounded in Vice's interference with Fox's

right to seek public office. *Id*. at 830, 131 S. Ct. 2211, 180 L. Ed. 2d at 52. Vice removed

the case to federal district court, where he, thereafter, prevailed on a motion for summary

---

[11] In relevant part, 42 U.S.C. § 1988 states the following:

(b) Attorney's fees
In any action or proceeding to enforce a provision of sections 1981, 1981(a), 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.] title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable to any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

judgment on the § 1983 claims. *Id.* The federal court remanded the case to state court for adjudication of the remaining state-law claims.

In the federal district court, Vice requested an award of attorney's fees pursuant to 42 U.S.C. § 1988 on the grounds that Fox's claims were without merit. Vice "submitted attorney billing records estimating the time spent on the whole suit, without differentiating between the federal and state-law claims." *Id.* at 830, 131 S. Ct. at 2212, 180 L. Ed. 2d at 52. The District Court granted Vice's motion for attorney's fees without requiring Vice to segregate the work done on the state law claims from his work on the federal law claims. *Id.* According to the district court, segregation of work performed for the frivolous and non-frivolous claims "was unnecessary because the 'various claims arose out of the same transaction and were so interrelated that their prosecution or defense entailed proof or denial of essentially the same facts." *Id.* at 831, 131 S. Ct. at 2212, 180 L. Ed. 2d at 52. A divided Fifth Circuit panel affirmed.

The United States Supreme Court vacated the judgment and remanded the case. *Id.* at 841, 131 S. Ct. at 2218, 180 L. Ed. 2d at 59. When deciding how a trial court allocates fees to defendants "in a lawsuit involving a mix of frivolous and non-frivolous claims", the Supreme Court reaffirmed the "but-for" test as the appropriate standard. *Id.* at 835–37, 131 S. Ct. at 2214–16, 180 L. Ed. 2d at 55–56. Recognizing that the but-for standard "may in some cases allow compensation to a defendant for attorney work relating to both frivolous and non-frivolous claims," the Supreme Court explained that the "dispositive question is not whether attorney costs at all relate to a non-frivolous claim, but whether the

31

costs would have been incurred in the absence of the frivolous allegation." *Id*. at 837, 838, 131 S. Ct. at 2216, 180 L. Ed. 2d at 56, 57.

The Supreme Court cautioned trial courts that the "determination of fees 'should not result in a second major litigation.'" *Id*. at 838, 131 S. Ct. at 2216, 180 L. Ed. 2d at 57 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40, 53 (1983)). Although the petitioning party must substantiate his request for fees with appropriate documentation, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Id*. The Court explained that the "essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id*. Finally, the Supreme Court reminded appellate courts when reviewing a trial court's determination of an allocation of an attorney's time, the reviewing court "must give substantial deference to these determinations[] in light of 'the [trial] court's superior understanding of the litigation.'" *Id*. ("We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it."). The Court remanded the case to the district court. *Id*. at 840, 131 S. Ct. at 2217, 180 L. Ed. 2d 45.

Petitioner asks us to adopt the standard set forth in *Fox*, which was based on an award of attorney's fees to defendants pursuant to 42 U.S.C. § 1988. At the outset, we note that we have never previously relied upon § 1988 to interpret Rule 1-341. Indeed, the appropriate federal analogue to Rule 1-341 is Federal Rule of Civil Procedure 11.[12] *See*

---

[12] In relevant part, Fed. R. Civ. P. 11 states:

(b) Representations to the Court. By presenting to the court a pleading, written

(continued . . .)

32

*Johnson v. Baker*, 84 Md. App. 521, 543, 581 A.2d 48, 59 (1990) (discussing how Rule 1-341 differs in purpose from Fed. R. Civ. P. 11); *see also Legal Aid Bureau, Inc. v. Bishop's Garth Associates L.P.*, 75 Md. App. 214, 222, 540 A.2d 1175, 1179 (1988) (explaining that the federal analogue to Rule 1-341 is Fed. R. Civ. P. 11).

Moreover, the context in which an award of attorney's fees pursuant to § 1988 arises is distinct from that in which an award of attorney's fees is granted pursuant to Rule 1-341. Section 1988 applies only in civil rights cases, where, typically, a prevailing party has "corrected a violation of federal law and, in doing so, has vindicated Congress's statutory purposes." *Fox*, 563 U.S. at 834, 131 S. Ct. at 2214, 180 L. Ed. 2d at 54. Rule 1-341, in

---

(. . . continued)

> motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> (c) Sanctions
> (1) *In general.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

contrast, applies to litigation positions by any party in any context where a party has advanced a position in bad faith or without substantial justification. *See generally Braverman*, 228 Md. App. at 253–65, 137 A.3d at 384–92 (discussing an award for fees pursuant to § 1988 and an award for fees under Rule 1-341, both of which the Circuit Court granted).

The purposes of the fee-shifting statutes differ as well. Section 1988 was intended specifically to balance, for reasons of equity, incentives for plaintiffs' attorneys to take civil rights cases against creating incentives for plaintiffs' attorneys to bring frivolous claims. *See Blanchard v. Bergeron*, 489 U.S. 87, 93, 95, 109 S. Ct. 939, 944, 945, 103 L. Ed. 2d 67 (1989) (stating § 1988 was implemented "to make sure that competent counsel was available to civil rights plaintiffs" and "to ensure effective access to the judicial process for persons with civil rights grievances."); *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978) (explaining "that while Congress wanted to clear the way for suits to be brought under [Title VII], it also wanted to protect defendants from burdensome litigation having no legal or factual basis."); *cf. Beery*, 89 Md. at 102, 597 A.2d at 526–27 ("[T]he court must be guided by the principle that . . . despite our occasional use of the word 'sanction,' [Rule 1-341] is not punitive but is intended merely to compensate the aggrieved party for their reasonable costs and expenses, including reasonable attorney's fees[.]").

Notwithstanding the distinctions between § 1988 and Rule 1-341, *Fox*'s reasoning is consistent with our jurisprudence. *Fox*, thus, affirms our caselaw, not only for determining how attorney's fees should be allocated in cases where frivolous claims exist

34

alongside non-frivolous claims, but also for how hearing judges, as well as their appellate counterparts, should consider attorney fees awards.

To the extent that *Fox* stands for the proposition that parties are "not entitled to [attorney's] fees arising from [] non-frivolous charges," *see Fox*, 563 U.S. at 834, 131 S. Ct. 2214, 180 L. Ed. 2d at 54, that proposition is well established in our jurisprudence. *See Barnes.*, 126 Md. App. at 106, 727 A.2d at 436; *Beery*, 89 Md. at 102, 597 A.2d at 527. *Fox* applied a "but-for" test to frivolous claims, and, although Maryland courts have not framed it in those terms, the principle is consistent with our caselaw. *Barnes*, 126 Md. App. at 106, 727 A.2d at 436 ("[I]n cases involving multiple causes of action . . . a court must make specific findings of fact as to which part of the litigant's attorney's fees and expenses are attributable to the maintenance of the meritless claims."). Furthermore,

> a party seeking 'sanctions' under Rule 1-341, *i.e.*, reimbursement of reasonable expenses including reasonable attorney's fees, incurred in opposing an unjustified or bad faith claim or defense, must not only establish the bad faith or lack of justification but also *the expenses actually incurred as a result thereof.* . . . Where only part of a proceeding was maintained in bad faith or without substantial justification . . . . [a] *post facto* arbitrary apportionment of generalized time records will not suffice.

*Beery*, 89 Md. at 102, 597 A.2d at 527 (emphasis added).

In *Fox,* the Supreme Court acknowledged the tension inherent in fee-shifting when it warned that courts should not become "green-eyeshade accountants" and cautioned against attorney's fees hearings resulting in a "second major litigation." 563 U.S. at 838, 131 S. Ct. at 2216, 180 L. Ed. 2d at 57. This notion is entirely consistent with what this Court has previously observed:

35

> A precise allocation is not always practicable, however. . . . [I]t may not always be possible to make a precise allocation of time or expenses among [multiple] claims. . . . It is not reasonable to expect a lawyer to have in tow an industrial engineer with a stop watch to measure how much time was devoted to one claim or another. . . . Because such a precise delineation may not always be practicable, however, we do not regard it as a *sine qua non* of the right to recover, for to conclude otherwise would, in many cases, deny *all* recovery where some recovery is clearly warranted.

*Diamond Point Plaza Ltd.,* 400 Md. at 761, 929 A.2d at 957–58 (emphasis omitted). It is the duty of a court to accomplish "rough justice, not [] auditing perfection" when determining what attorney's fees to award under the circumstances. *Fox*, 563 U.S. at 838, 131 S. Ct. at 2216, 180 L. Ed. 2d at 57. Accordingly, a court "must [first] find that [a] proceeding was maintained or defended in bad faith and/or without substantial justification. . . . Second, [a court] must find that the bad faith and/or lack of substantial justification merits the assessment of costs and/or attorney's fees." *Inlet Assocs.*, 324 Md. at 267–68, 596 A.2d at 1056. Lastly, a court may then award reasonable attorney's fees based upon "*the expenses actually incurred as a result*" of the litigation position or positions that lacked substantial justification or were brought in bad faith. *Beery*, 89 Md. App. at 102, 597 A.2d at 527.

## V.

In conclusion, we find no error committed by the hearing judge when he found that Petitioner's claims of fraudulent inducement, negligent misrepresentation, and wrongful termination lacked substantial justification; therefore, we affirm the findings of the hearing judge. In light of the lack of articulation in the record of the hearing judge's basis for determining the amount of attorney's fees to award Respondents, we conclude that the

36

hearing judge abused his discretion when he awarded $300,000 in attorney's fees. The proper remedy consistent with Maryland law is to vacate the award of attorney's fees and remand for additional fact finding, on the record, on the question of the proper amount of attorney's fees to be awarded, if any.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PETITIONER.**